STATE of Minnesota, Petitioner,

v.

Shawnatee Marie TENNIN,
Respondent.

No. A03–1281.

Supreme Court of Minnesota.

Feb. 12, 2004.

Mike Hatch, Minnesota Attorney General, Thomas R. Ragatz, Assistant Attorney General, St. Paul, for Appellant.

Leonardo Castro, Chief Public Defender, Geoffrey Isaacman, Assistant State Public Defender, Minneapolis, for Respondent.

Eric Lee Lipman, Minneapolis, for Amici Legislators.

## OPINION

BLATZ, Chief Justice.

We are asked to determine whether the State of Minnesota's imposition of a co-payment obligation on individuals who receive public defender services, in the manner prescribed by Minn.Stat. § 611.17, subd. 1(c) (Supp.2003), is constitutional. The district court declared section 611.17, subdivision 1(c) (Supp.2003), unconstitutional, enjoined further collection of co-payments, and certified the question to the court of appeals pursuant to Minn. R.Crim. P. 28.03. We granted accelerated review.

On August 26, 2003, respondent Shawnatee Marie Tennin was charged with prostitution under Minn.Stat. § 609.324 (2002), and made her first appearance in district court shortly thereafter. Upon completing a public defender eligibility affidavit in which Tennin indicated that her entire income comprised $250 per month in public assistance, the district court determined that Tennin met the criteria for public defender eligibility. The co-payment statute, as amended in 2003, was applied and Tennin was obligated to pay a $50 co-payment for public defender assistance. Upon notification of her obligation to pay, Tennin declined representation, claiming that she could not afford the co-payment. Later, Tennin determined that she needed the assistance of counsel and paid the $50 co-payment. A public defender was subsequently appointed to assist her.

Through counsel, Tennin challenged the constitutionality of the 2003 co-payment statute, arguing that the statute violated her right to counsel under the Minnesota and United States Constitutions. On September 2, 2003, the district court found Minn.Stat. § 611.17, subd. 1(c) (Supp. 2003), unconstitutional. In arriving at its conclusion that the statute is unconstitutional, the court relied on *State v. Cunningham*, a Minnesota Court of Appeals decision that upheld Minn.Stat. § 611.17 (2002), which, unlike the amended statute, contained language allowing for judicial waiver of a co-payment. *State v. Cunningham*, 663 N.W.2d 7 (Minn.App.2003). In *Cunningham*, the court of appeals instructed district courts to exercise their discretion to waive co-payments in a manner consistent with the United States Supreme Court decision in *Fuller v. Oregon* and the Sixth Amendment of the United States Constitution. *Cunningham*, 663 N.W.2d at 11; *Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974); U.S. Const. amend. VI.

Applying the reasoning of *Cunningham* to the present version of section 611.17,

the district court in the instant case found that "[t]he very [waiver] language in which the Court of Appeals predicated its finding that the previous version of the statute was constitutional is completely absent in the 2003 version of [Minn.Stat.] § 611.17." Further, the court noted that not only did the legislature eliminate the court's authority to waive the co-payment, it also chose to levy a flat co-payment against all public defender clients without distinguishing between their financial circumstances.

Based on this ruling, the district court enjoined further collection of co-payments and certified the issue for appellate review pursuant to Minn. R.Crim. P. 28.03. The state, joined by amici Minnesota State legislators,[1] challenges the district court's findings and order that section 611.17 is unconstitutional. On September 24, 2003, we granted accelerated review.

 "A certified question 'should be carefully and precisely framed so as to present distinctly and clearly the question of law involved.'" *State v. Larivee*, 656 N.W.2d 226, 228 (Minn.2003) (quoting *Thompson v. State*, 284 Minn. 274, 277, 170 N.W.2d 101, 103 (1969)). Otherwise, the certified-question procedure runs the risk of seeking an impermissible advisory opinion. *Jacka v. Coca–Cola Bottling Co.*, 580 N.W.2d 27, 30 (Minn.1998). While the district court did not precisely frame the certified question, the court's order and memorandum make clear that the question of law presented may fairly be stated as follows:

> Does Minn.Stat. § 611.17, subd. 1(c), as amended, violate the right to counsel under the United States and Minnesota Constitutions?

 A certified question is a question of law which we review de novo. *B.M.B. v. State Farm Fire & Cas. Co.*, 664 N.W.2d 817, 821 (Minn.2003). The constitutionality and the construction of a statute are also reviewed de novo. *State v. Grossman*, 636 N.W.2d 545, 548 (Minn.2001); *State v. Colvin*, 645 N.W.2d 449, 452 (Minn.2002).

Central to the issue raised in this case is the express statutory language set forth in section 611.17. The 2003 statute establishes co-payment fees to be paid by indigents who receive public defender services. Prior to amendment, the statute provided:

> Upon disposition of the case, an individual who has received public defender services shall pay to the court a $28 co-payment for representation provided by a public defender, unless the co-payment is, or has been, waived by the court. The co-payment shall be deposited in the state general fund. If a term of probation is imposed as a part of an offenders sentence, the co-payment required by this section must not be made a condition of probation. The co-payment required by this section is a civil obligation and must not be made a condition of a criminal sentence.

Minn.Stat. 611.17(c) (2002).

The 2003 amended version of section 611.17, subdivision 1(c), instituted three significant changes: (1) the statute created a co-payment obligation upon appointment of the public defender rather than at disposition of the case; (2) it deleted the express language establishing a judicial waiver of the co-payment; and (3) it increased the amount of the co-payment. As amended, the statute provides in relevant part:

---

**1.** State Representatives Steve Smith, Eric Lipman, Doug Fuller, Dale Walz, and Steve Strachan submitted an *amicus curiae* brief, which concurred with the arguments advocated by the State.

Upon appointment of the public defender, an individual who receives public defender services shall be obligated to pay to the court a co-payment for representation provided by a public defender. The co-payment shall be according to the following schedule:

(1) if the person was charged with a felony, $200;

(2) if the person was charged with a gross misdemeanor, $100; or

(3) if the person was charged with a misdemeanor, $50.

\* \* \* \*

If a term of probation is imposed as a part of an offender's sentence, the co-payment required by this section must not be made a condition of probation. The co-payment required by this section is a civil obligation and must not be made a condition of a criminal sentence. Collection of the co-payment may be made through the provisions of chapter 270A, the Revenue Recapture Act.

Minn.Stat. § 611.17, subd. 1(c) (Supp. 2003). It was this amended version of the co-payment statute that was applied to Tennin.

■ Statutes are presumed constitutional and will be declared unconstitutional "with extreme caution and only when absolutely necessary." *State v. Larsen,* 650 N.W.2d 144, 147 (Minn.2002) (citation omitted). A statute is unconstitutional only if there is no reasonable alternative construction available. *State v. Harris,* 667 N.W.2d 911, 919 (Minn.2003). To successfully challenge the constitutionality of a statute, the challenger—here Tennin—must overcome the heavy burden of showing beyond a reasonable doubt that the statute is unconstitutional. *State v. Merrill,* 450 N.W.2d 318, 321 (Minn.1990).

■ The United States and Minnesota Constitutions contain nearly identical language concerning a criminal defendants right to counsel. "In all criminal prosecutions, the accused shall enjoy the right \* \* \* to have the assistance of counsel for his defense." U.S. Const. amend. VI; Minn. Const. art. I, 6.[2] In support of this constitutional right to counsel, Minnesota law provides that a defendant who is financially unable to afford counsel is entitled to have a public defender appointed. Minn. Stat. § 611.14 (2002); Minn. R.Crim. P. 5.02, subd. 1. The district court may require a defendant, to the extent able, to compensate the governmental unit which bore the cost of the appointed public defender. Minn. R.Crim. P. 5.02, subd. 5. The fact that an indigent who accepts state-appointed legal representation knows that he might someday be required to repay the cost of these services does not impair the defendant's right to counsel. *See Fuller,* 417 U.S. at 53, 94 S.Ct. at 2124.

■ Nonetheless, the requirement to repay costs of counsel is not without limit. In analyzing a recoupment statute from the State of Oregon, the United States Supreme Court held that Oregon's statute requiring an individual to reimburse the state for the services of a public defender was in line with the Sixth Amendment where "[t]hose who remain indigent or for whom repayment would work 'manifest hardship' are forever exempt from any obligation to repay." *Id.* The question thus arises, does Minn.Stat. § 611.17, subd. 1(c) (Supp.2003), which states that "[u]pon appointment of the public defender, an individual who receives public defender services shall be obligated to pay to the court a co-payment for representation provided by a public defender," exempt

---

**2.** Where the Sixth Amendment of the United States Constitution reads "for his defense," the Minnesota Constitution, article I, section 6, reads, "in his defense."

persons who remain indigent or for whom repayment of the co-payment would work a manifest hardship? The answer to this question is critical to our analysis of the certified question.

■ While we acknowledge that state legislatures are free to draft the language of their own statutes within the dictates of the Constitution, we draw guidance from the United States Supreme Court's review of the Oregon recoupment statute. Two particular components of that statute recognized by the Court are relevant to our analysis: (1) the Oregon statute's express language that a court could not order a defendant to pay legal expenses unless the defendant is or will be able to pay them, or if hardship would result if repayment was ordered; and (2) the Oregon statute's provision for a defendant to petition the court at any time for remission of the payment costs, which the court may grant if payment "will impose manifest hardship on the defendant or his immediate family." *Fuller*, 417 U.S. at 45–46, 94 S.Ct. at 2121.

Because the Oregon statute was "quite clearly directed only at those convicted defendants who are indigent at the time of the criminal proceedings against them but who subsequently gain the ability to pay the expenses of legal representation," the Court held that the statute did not deprive indigent defendants of the right to counsel. *Id.* at 46, 94 S.Ct. at 2121. "Defendants with no likelihood of having the means to repay are not put under even a conditional obligation to do so, and those upon whom a conditional obligation is imposed are not subjected to collection procedures until their indigency has ended and no 'manifest hardship' will result." *Id.* In effect the statute provided two possibilities for indi-

gent criminal defendants to be relieved of having to pay for legal services: "Oregon's legislation is tailored to *impose an obligation only upon* those with a foreseeable ability to meet it, and to *enforce that obligation only against* those who actually become able to meet it without hardship." *Id.* at 54, 94 S.Ct. at 2125 (emphasis added). Relying heavily on the *Fuller* opinion, Tennin argues it is the absence of statutory language similar to that adopted by the Oregon legislature that is fatal to the current Minnesota co-payment statute's constitutionality. In Tennin's view, the Minnesota statute's requirement is non-waivable and must be imposed without regard to a defendant's ability to pay or the hardship caused.

■ While emphasizing the heavy burden placed on the defendant to overcome the presumption of constitutionality, the state advances three principal arguments in its briefs, and yet another separate argument during oral arguments in support of section 611.17, subd. 1(c) (Supp.2003). We will address all four of the state's arguments in turn, but before doing so we must dispel the assumption the state makes that, because the Revenue Recapture Act is the only collection mechanism mentioned in the statute, it excludes all other means of collection. The final sentence of section 611.17, subdivision 1(c) clearly provides otherwise: "Collection of the co-payment *may* be made through the provisions of chapter 270A, the Revenue Recapture Act." Minn.Stat. § 611.17, subd. 1(c) (Supp.2003) (emphasis added). Under the canons of statutory construction, the word "may" is permissive and the word "shall" is mandatory. Minn.Stat. § 645.44, subds. 15, 16 (2002).[3] Therefore, the final

---

3. Even if section 611.17, subdivision 1(c) (Supp.2003) had expressly mandated exclusive use of the Revenue Recapture Act, the Act itself provides, "The collection remedy under this section is in addition to and not in substitution for any other remedy available by law." Minn.Stat. § 270A.04, subd. 1 (2002).

sentence of section 611.17, subdivision 1(c) makes collection under the provisions of the Revenue Recapture Act optional, not mandatory.

The state first argues that the current version of the statute grants judges the express power to waive the co-payment. To support its argument the state ignores the part of section 611.17, subdivision 1(c) which states, " * * * [A]n individual who receives public defender services *shall* be obligated to pay * * *," and instead focuses on the final sentence of the same section: "Collection of the co-payment may be made through the provisions of chapter 270A, the Revenue Recapture Act." Minn. Stat. § 611.17, subd. 1(c) (Supp.2003) (emphasis added). In the state's view, inclusion of this sentence empowers judges to make a finding on a particular defendant's indigence and then determine whether to waive the co-payment. In light of our reading of the Revenue Recapture Act provision of section 611.17 above, we find the state's argument unpersuasive. Further, prior to amendment, the previous version of section 611.17 contained an express judicial waiver provision, which was deleted by the legislature. Thus, the state's contention that the legislature removed an express waiver provision and still intended that co-payments could be waived by the court due to statutory language referencing one collection mechanism is untenable. We conclude that section 611.17, as amended, does not provide for judicial waiver.

Second, the state argues that even if the statute does not grant express judicial waiver of co-payments, courts maintain an implied power to refrain from imposing co-payments through their authority over the collection process. As such, when a court determines that a defendant is indigent[4] or that payment would work a manifest injustice, the court may simply decline to report a co-payment debt to the commissioner of revenue. As an initial matter, this argument assumes that the Revenue Recapture Act is the exclusive means of collecting co-payments under section 611.17, a proposition we have already rejected above. Equally important, the argument overlooks language in the appropriations article of the same 2003 Act in which section 611.17 was amended. The appropriations article includes this provision:

> The court administrator in each county shall make all reasonable and diligent efforts to promptly collect public defender co-payments. If the court administrator is unable to collect the co-payment, the court administrator shall timely submit a claim for revenue recapture.

Act of May 28, 2003, ch. 2, art. 1 § 4 (2003 First Sp. Sess.), 2003 Minn. Laws 1387. The use of the word "shall" belies the state's argument that collection is discretionary. Therefore, we conclude that an implied judicial waiver does not exist in the statute.

Third, the state argues that the provisions of the Revenue Recapture Act offer indigent defendants sufficient protection from manifest hardship. The Revenue Recapture Act collects debts by withholding certain refunds, including income and property tax refunds as well as lottery prizes.[5] The interpretation advanced by

4. The standards for public defense eligibility are set forth in Minn.Stat. § 611.17 (2002) and Minn. R.Crim. P. 5.02.

5. Under the Revenue Recapture Act the collection process is triggered once a claimant agency submits the debt to the commissioner of revenue. Minn.Stat. § 270A.07, subd. 1 (2002). Upon receipt, the commissioner initiates procedures to discover any refunds payable to the debtor. Minn.Stat. § 270A.07, subd. 2(a) (2002). Debts are deducted from refunds prior to distribution to the debtor.

the state equates a taxpayer who receives a refund with one who is able to afford the co-payment without manifest hardship, a conclusion which does not comport with the reality of our tax system. Recognizing that marginally employed or low-income employees are usually entitled to tax refunds, the Revenue Recapture Act, left to itself, would collect co-payment debts from indigent defendants, an unconstitutional result under *Fuller*. Further, as illustrated by the facts of the present case, some indigent defendants manage to pay the co-payment at the time it is imposed and therefore, never receive the purported protections of the Revenue Recapture Act. For these reasons, the Revenue Recapture Act, by itself, offers insufficient protection against imposing co-payments on defendants who remain indigent and those for whom repayment would cause a manifest hardship.

Finally, during oral argument, the state appeared to reframe its briefed arguments by arguing that Minn.Stat. § 611.17, subd. 1(c) provides district courts with discretion and that it is the duty of this court to instruct judges to exercise this discretion consistent with *Fuller*. The state bases this argument on the statute's use of the words "shall" and "may." The state contends that these words, used in the same section, create ambiguity and, therefore, judicial discretion must be read into the statute. However, a reading of the express language of the statute does not support the conclusion that ambiguity can be found within section 611.17, subdivision 1(c).

> Upon appointment of the public defender, an individual who receives public defender services *shall* be obligated to pay to the court a co-payment for representation provided by a public defender. * * * Collection of the co-payment *may* be made through the provisions of chapter 270A, the Revenue Recapture Act.

*Id.* (emphasis added). The co-payment statute clearly and unambiguously provides that a defendant shall pay a co-payment fee, which may be collected under the provisions of the Revenue Recapture Act. This construction does not give rise to ambiguity, much less discretion. To read discretion into the statute, as the state asks us to do, would infringe on the proper exercise of legislative authority. Such an interpretation would raise concerns about the separation of powers, as it essentially transforms the statute back into its unamended form and directly contradicts the express language of the amendments made by the legislature in 2003.

Given the clear language of the amended statute, we hold that Tennin has met the heavy burden of showing that Minn.Stat. § 611.17, subd. 1(c) (Supp.2003) is unconstitutional. While co-payment and recoupment may properly be required, the Sixth Amendment's protections identified by the United States Supreme Court in its *Fuller* decision are absent in Minnesota's co-payment statute. The Oregon statute essentially had the equivalent of two waiver provisions—one which could be effected at imposition and another which could be effected at implementation. In contrast, the Minnesota co-payment statute has no similar protections for the indigent or for those for whom such a co-payment would impose a manifest hardship. Accordingly, we hold that Minn.Stat. § 611.17, subd. 1(c), as amended, violates the right to counsel un-

Minn.Stat. § 270A.07, subd. 2(b) (2002). The term "refund" includes individual income tax refunds, political contribution refunds, property tax credits or refunds, lottery prizes, and amounts granted to persons by the legislature on the recommendation of the joint subcommittee on claims. Minn.Stat. § 270A.03, subd. 7 (2002).

der the United States and Minnesota Constitutions.

Certified question answered in the affirmative.