No. 99,023

STATE OF KANSAS, *Appellee*, v. CYNTHIA CASADY, *Appellant*.

(210 P.3d 113)

Opinion filed June 26, 2009.

*Shawn E. Minihan*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Charles D. Baskins*, county attorney, argued the cause, and *Steve Six*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: On review from a published decision by the Court of Appeals in *State v. Casady*, 40 Kan. App. 2d 335, 191 P.3d 1130 (2008), Cynthia Casady seeks review of its opinion affirming the district court's imposition of a $100 Board of Indigents' Defense Services (BIDS) application fee.

The facts underlying this appeal are not in dispute. On March 29, 2007, the State filed a complaint charging Casady with one count of possession of prescription drugs without a prescription, K.S.A. 65-4160; one count of possession of marijuana, K.S.A. 65-4162(a)(3); and one count of possession of drug paraphernalia, K.S.A. 65-4152(a)(2). The district court found that Casady was indigent and appointed an attorney from the panel prescribed by the Board of Indigents' Defense Services (BIDS) to represent her. She eventually entered a plea of guilty to the count of possession of prescription drugs without a prescription; the two other counts were dismissed. The district court sentenced her to 30 months' incarceration. At sentencing, the court also assessed court costs of $163, a drug testing fee of $10, a booking fee of $25, and a BIDS administrative fee of $100. The court found Casady financially unable to pay the BIDS attorney fees. Casady made no objection to the imposition of the other costs and fees.

Casady filed a timely notice of appeal. The Court of Appeals affirmed the district court's assessment of the $100 administrative fee in *Casady*, 40 Kan. App. 2d at 338-41; see also *State v. Loggins*, 40 Kan. App. 2d 585, 194 P.3d 31 (2008) (relying on and adopting

the rationale of *Casady*). This court granted Casady's petition for review.

Casady urges this court to find that the $100 BIDS application fee mandated by K.S.A. 22-4529 violates an indigent defendant's rights under the United States and Kansas Constitutions.

Constitutional grounds for reversal asserted for the first time on appeal are generally not properly before an appellate court for review. *State v. Gaudina*, 284 Kan. 354, 372, 160 P.3d 843 (2007). When a statute places mandatory duties on a district court to impose BIDS attorney fees, however, it may be necessary for this court to consider an issue not raised below in order to serve the ends of justice. *State v. Stevens*, 285 Kan. 307, 330, 172 P.3d 570 (2007); see also *State v. King*, 288 Kan. 333, 353-54, 204 P.3d 585 (2009) (even though appellant did not raise to district court issue of ability to pay restitution, court may consider issue on appeal as necessary to serve ends of justice or prevent denial of fundamental rights). We accordingly elect to consider the appeal on its merits.

When reviewing a constitutional challenge to a statute authorizing reimbursement by indigent defendants for litigation expenses, the standard of review is unlimited. See *State v. Robinson*, 281 Kan. 538, 540, 132 P.3d 934 (2006).

"A statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. This court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional, if the same can be done within the apparent intent of the legislature in passing the statute. [Citation omitted.] However, we may not rewrite a clear and unambiguous statute to make it pass constitutional muster. [Citation omitted.]" *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629-30, 176 P.3d 938 (2008).

K.S.A. 22-4529 provides in relevant part:

"Any defendant entitled to counsel pursuant to K.S.A. 22-4503, and amendments thereto shall pay an application fee in the amount of . . . $100 on or after July 1, 2004, to the clerk of the district court. If it appears to the satisfaction of the court that payment of the application fee will impose manifest hardship on the defendant, the court may waive payment of all or part of the application fee. . . . If the defendant is acquitted or the case is dismissed, any application fee paid pursuant to this section shall be remitted to the defendant."

The Sixth Amendment to the United States Constitution provides that the accused shall enjoy the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; see also § 10 of the Kansas Constitution Bill of Rights ("In all prosecutions, the accused shall be allowed to appear and defend in person, or by counsel."). The Sixth Amendment right to counsel is a fundamental constitutional right and, unless that right is knowingly and intelligently waived, counsel must be provided to an indigent defendant. *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963). The right to counsel for indigent criminal defendants is tied to the Due Process Clause of the Fourteenth Amendment to the United States Constitution and applies to state court actions. 372 U.S. at 342-43.

In *Robinson*, 281 Kan. at 543-44, this court considered reimbursement of BIDS attorney fees under K.S.A. 22-4513 and held that the district court must consider on the record the defendant's financial resources and the burden the payment would impose on the defendant at the time of sentencing. The court also rejected a due process claim that the appellant was denied the opportunity to contest the amount or validity of the attorney fees, finding that the appellant had advance access to the fee schedule and the opportunity to speak regarding the schedule at sentencing. 281 Kan. at 548. The court did not explicitly address the Sixth Amendment right-to-counsel implications of the reimbursement statute.

The K.S.A. 22-4529 BIDS application fee was a subject of appeal in *State v. Hawkins*, 285 Kan. 842, 176 P.3d 174 (2008). That appeal also did not raise a Sixth Amendment objection to the imposition of the application fee. Instead, the appellant in *Hawkins* argued that it was "unfair" to require nonlawyer defendants to understand that they could request waiver of the application fee prior to the appointment of counsel. This court disagreed, finding that a district court would have adequate documentation relating to a defendant's financial status at the time the request for counsel was initially submitted and could assess the fee at that time. 285 Kan. at 852. The court could also determine at that time, based on affidavits submitted by the defendant, whether the application fee would constitute "manifest hardship." 285 Kan. at 853.

Most recently, this court revisited the subject of BIDS attorney fees and BIDS application fees in *State v. Phillips*, 289 Kan. 28, 210 P.3d 93 (2009). In *Phillips*, we held that an order to pay an application fee is merely an imposition of costs and is neither punitive nor part of a sentence. 289 Kan. 28, Syl. ¶ 4. Because the defendant's ability to pay the fee is considered at the time the defendant submits an application for appointed counsel, the district court is not required to make further findings at sentencing to validate the assessment of the application fee. 289 Kan. 28, Syl. ¶ 8.

In *Fuller v. Oregon*, 417 U.S. 40, 40 L. Ed. 2d 642, 94 S. Ct. 2116 (1974), the United States Supreme Court provided the central analysis relating to Sixth Amendment implications for assessing costs for court-appointed counsel. In *Fuller*, the Supreme Court examined an Oregon statute that provided for the reimbursement of the costs for legal representation only after indigent defendants acquired the financial means to make payments. The Oregon statute was "carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so." 417 U.S. at 53. Defendants who had no likelihood of being able to repay the costs at the time the costs were imposed were not even conditionally obligated to pay, and defendants who were obligated to pay were not subjected to collection proceedings until they were no longer indigent. 417 U.S. at 44-45. The Court did not regard the fact that a defendant might some day be required to pay the costs of representation as a factor detracting from the right to counsel that the statute provided. 417 U.S. at 53. This was because the obligation to pay did not come into being until the defendant was no longer indigent or under circumstances where the payment would constitute " 'manifest hardship.' " See 417 U.S. at 53-54.

In *Olson v. James*, 603 F.2d 150 (10th Cir. 1979), the Tenth Circuit Court of Appeals decided that the version of the Kansas attorney fee reimbursement statute in effect at that time was unconstitutional. After examining United States Supreme Court decisions, the court inferred that a reimbursement statute "must not indiscriminately pursue the indigent as well as those who have ac-

quired the means of repaying." 603 F.2d at 154. The court found that a constitutional reimbursement statute contains four hallmarks. These are: (1) The requirement of repayment is imposed only on "a convicted (not an acquitted) defendant or on one whose conviction is reversed on appeal" [sic]; (2) courts must not require convicted defendants to pay counsel expenses unless the defendants are able to repay them or will likely be able to repay them in the future; (3) convicted persons who are obligated to repay counsel costs should be able to petition for remission of the payment costs at any time; and (4) convicted defendants who can demonstrate that they did not intentionally default on their repayment orders must not be held in contempt of court. 603 F.2d at 155.

Other states have approached indigent reimbursement statutes in a fashion generally consistent with these opinions.

In *State v. Tennin*, 674 N.W.2d 403 (Minn. 2004), the court considered a statute that required defendants who were eligible for representation by public defenders to pay a $50 copayment for legal assistance. The Minnesota statute read: "Upon appointment of the public defender, an individual who receives public defender services shall be obligated to pay to the court a copayment for representation provided by a public defender." Minn. Stat. § 611.17(1)(c) (2003 Supp.). The Minnesota Supreme Court found the statute unconstitutional. 674 N.W.2d at 410-11. The court found that "[t]he fact that an indigent who accepts state-appointed legal representation knows that he might someday be required to repay the cost of these services does not impair the defendant's right to counsel." 674 N.W.2d at 407. The court went on to hold, however, that "the requirement to repay costs of counsel is not without limit." 674 N.W.2d at 407. The absence of an option for judicial waiver of the copayment placed the statute in conflict with the Sixth Amendment and rendered it unconstitutional. 674 N.W.2d at 410.

In *State v. Webb*, 358 N.C. 92, 591 S.E.2d 505 (2004), the North Carolina Supreme Court considered a statute that imposed a $50 appointment-of-counsel fee at the time of appointment and regardless of the outcome of the case. The court found that a requirement that the defendant pay regardless of the outcome of the

prosecution violated state constitutional protection from assessment of costs against acquitted defendants. The court found no distinction of constitutional significance between a statutory "fee" and statutory "costs." 358 N.C. at 97-98. The court severed the statutory requirements that payment be made "at the time of appointment" and "regardless of the outcome of the proceedings" from the remainder of the statute and permitted the State to collect the fee from indigent defendants *after* they were convicted or pled guilty or nolo contendere. 358 N.C. at 99-100. After construing the statute so as to meet constitutional standards, defendants would not be required to pay the appointment fee until they were convicted. 358 N.C. at 100.

In both *State v. Threatt*, 108 Ohio St. 3d 277, 279-81, 843 N.E.2d 164 (2006), and *State v. White*, 103 Ohio St. 3d 580, 581-84, 817 N.E.2d 393 (2004), the Ohio Supreme Court distinguished between payment of attorney fees and payment of court costs and upheld the collection of costs even from indigent defendants. In *Threatt,* the court held that attorney fees and court costs are constitutionally distinct.

"The purpose of determining before or during trial whether a defendant is indigent is to protect his or her constitutional rights, such as the right to counsel, from infringement caused by his or her indigency. [Citation omitted.] Thus, that protection does not shelter a convicted defendant from other burdens, such as court costs. [Citation omitted.]" 108 Ohio St. 3d at 280.

Those costs are imposed at sentencing and may be waived at the sentencing court's discretion upon a showing of indigence. 108 Ohio St. 3d at 282.

A synthesis of these cases leads to several conclusions. The State must provide the assistance of legal counsel to an indigent defendant. Defendants may be required to repay some or all of the costs associated with their legal defense, but the repayment may not obstruct the defendant's access to counsel at any stage of a criminal proceeding, and repayment may only be enforced if there is some likelihood that the defendant will be able to repay the costs. The courts must be able to review the defendant's financial circumstances to determine whether to reduce or waive repayment of these costs. If changed circumstances reduce the defendant's abil-

ity to repay defense costs, then the defendant must be able to petition for reduction or elimination of the assessed costs. If the defendant is acquitted or the charges are dismissed, the defendant must not be required to repay the costs of counsel. Finally, courts may reasonably construe reimbursement statutes in a manner consistent with constitutional mandates.

K.S.A. 22-4529 allows a court to waive the application fee if manifest hardship would result from its imposition. *Hawkins* held that the district court may use the same supporting documentation for its findings relating to both the attorney fees and the application fee. 285 Kan. at 852-53. In the present case, the district court apparently considered Casady's financial circumstances, because it declined to impose BIDS attorney fees.

*Hawkins* implies that the BIDS application fee may be required prior to appointment of counsel. 285 Kan. at 851 (distinguishing K.S.A. 22-4529 as allowing for assessment of application fee prior to trial from K.S.A. 22-4513, which assesses costs of representation following conviction). "The legislative enactments obviously contemplate that the application fee, as the name suggests, is to be assessed at the time the defendant applies for court-appointed counsel." 285 Kan. at 852. *Hawkins* also recognizes, however, that part or all of the fee may remain unpaid at the time of sentencing. 285 Kan. at 853. If payment of the fee may be deferred, then the fee will not interfere with the immediate right to counsel.

Our Court of Appeals affirmed the imposition of the application fee. *Casady*, 40 Kan. App. 2d at 341. The Court of Appeals found that K.S.A. 22-4529 satisfies each of the four *Olson* elements of a constitutional statute.

The Court of Appeals refers to a finding of "manifest injustice" in order to waive the application fee. 40 Kan. App. 2d at 338. Such language is not contained in the statute; manifest hardship and manifest injustice are not identical concepts. When determining whether to waive the BIDS application fee based on manifest hardship, a district court is not required to find that the imposition of a BIDS application fee would also result in manifest injustice.

The Court of Appeals referred to a document that Casady signed when she applied for appointment of counsel, which read in part:

"C. *Repayment to the State*

"The court shall take into account the financial resources and the nature of the burden that payment of such sum will impose. Any person who has been required to pay such sum and who is not willfully in default may petition the sentencing court to waive payment of any remaining balance or portion thereof." 40 Kan. App. 2d at 337.

It is unclear whether this declaration referred only to payment of the cost of legal representation under K.S.A. 22-4513 or referred to payment of both the cost of legal representation and the application fee. The Court of Appeals found that the signed statement satisfied the third part of the *Olson* test, in that it allowed for petition for remission or waiver of the payment of costs in the event of financial hardship. 40 Kan. App. 2d at 339-40. Although this statement was signed by Casady, the language is not contained in the statute relating to the application fee and was not binding on the district court. The statement did not operate to preserve the constitutionality of K.S.A. 22-4529.

Even in the absence of a written statement acknowledging her rights, however, Casady was subject to the statutory BIDS application fee. We note that the application fee is typically assessed at first appearances or initial docket calls, proceedings not designed to address factual or legal issues. First appearances and docket calls are multifaceted, expedited proceedings. They are designed to apprise defendants of the charges on which they are being detained; to set bonds, conditions of release, and future court dates; and to appoint counsel, which includes assessing the BIDS application fees.

The BIDS application fee is constitutional so long as safeguards are in place to protect an indigent defendant's access to counsel. A district court is to determine the propriety of imposing the K.S.A. 22-4529 application fee at the time of the initial determination to appoint counsel. This assessment determination does not require any subsequent findings by the district court. In order to comport with constitutional standards, however, any enforcement of the obligation to pay the fee is to be deferred until the conclusion of proceedings in district court. If the defendant raises the issue of the ability to pay and demonstrates circumstances that preclude

payment of the application fee, the district court may reduce or waive a previously imposed application fee.

We find the application fee statute constitutionally sound both on its face and as applied and affirm the district court and the Court of Appeals.