NOT DESIGNATED FOR PUBLICATION

No. 109,973

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

BENITO CARDENAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ness District Court; BRUCE T. GATTERMAN, judge. Opinion filed April 1, 2016. Affirmed.

*Adam D. Stolte*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., BUSER, J., and HEBERT, S.J.

*Per Curiam*: Benito Cardenas was convicted by a jury of rape and aggravated criminal sodomy involving a 7-year-old child. The district court imposed concurrent life prison sentences without possibility of parole for 25 years.

On appeal, Cardenas argues the evidence was insufficient to sustain the convictions; the district court abused its discretion in denying his motions for sentencing departure; the district court abused its discretion in ordering him to pay the BIDS administrative fee; and the district court erred in denying his case-specific constitutional challenge to his hard 25 sentences.

We find no reversible error and affirm the convictions and sentences.

*Factual and Procedural Background*

Cardenas' challenge to the sufficiency of the evidence warrants a fairly detailed discussion of the underlying facts.

On September 4, 2010, Stormy Butterworth twice entrusted the care of her then 7- and 2-year-old daughters, C.B. and S.B., to her friend Dawn Venzor and Venzor's 35- year-old boyfriend, Cardenas. The first time, Butterworth ran a 30-minute, work-related errand while her daughters enjoyed their play date with Venzor's son. The second time, she went to buy a birthday present and stopped by her manager's house. At one point, Butterworth ran into Venzor who had left the home for a quick errand of her own. Each time Butterworth returned to Venzor and Cardenas' home, her girls were playing and nothing seemed out of the ordinary.

The next day (September 5), C.B. told Butterworth that Cardenas had sexually molested her while she was in his care. Specifically, C.B. told her mother that Cardenas had exposed his genitals to her, licked his finger, put it inside of her, took it out, and licked it again. He also showed C.B. pictures on his cell phone of children being molested or participating in sexual activity. C.B. said Cardenas told her she would be popular in school if she participated in this kind of activity. Butterworth and C.B.'s father spent the remainder of the day calmly discussing C.B.'s shocking revelations to make sure they did not misunderstand anything. The following day (September 6), Butterworth reported C.B.'s abuse allegations to the Ness County Sheriff's Department.

The ensuing police investigation included a videotaped forensic interview of C.B., which took place just over a week after the alleged abuse. During the interview, C.B.

disclosed that Cardenas twice digitally penetrated her vagina, which she referred to as her "kitty," licking his fingers before each insertion. C.B. also described how Cardenas made her place her hand on his exposed penis and also made her lick it. C.B. then physically demonstrated for the forensic interviewer how Cardenas made her do this. C.B. also described and drew what Cardenas' penis looked like. C.B. told the interviewer several times she punched Cardenas in the face, which the interviewer described as a coping mechanism kids will use for empowerment when describing a situation in which they had been "helpless to stop or do anything."

On September 14, 2010, C.B. also underwent a sexual assault examination, which did not reveal any signs of trauma. This, however, was not uncommon given the type of abuse C.B. reported and the amount of time that had passed between the reported abuse and the examination.

Further investigation did not reveal any additional information to incriminate Cardenas. The police obtained a search warrant for Cardenas' cell phone. The resulting search did not uncover any pornographic pictures. A deputy also interviewed Venzor several weeks after the alleged abuse. Venzor, who was known to take several potent prescription pain medications and was described as "spacey" during the interview, denied that she ever fell asleep while C.B. was at her house but could not remember if C.B.'s younger sister was present the entire time.

The State ultimately charged Cardenas with the rape and aggravated criminal sodomy of C.B. Both crimes were charged as off-grid felonies under what is commonly referred to as Jessica's Law, given C.B.'s and Cardenas' ages.

During her testimony at Cardenas' trial almost 2 years later, C.B. was uncomfortable and had difficulties remembering some specifics about the events that led to the charges against Cardenas, which she described as Cardenas "[t]rying to teach her

3

how to do sex." Her testimony sometimes varied from her recorded forensic interview, a video of which was also played for the jury. The jury also viewed a videotaped deposition of the State's expert witness, who apparently testified that C.B.'s hesitancies and inconsistencies in details were not uncommon under these circumstances. That videotape, however, does not appear in our record.

Cardenas testified in his defense, wholly denying C.B.'s sex abuse allegations. He also insisted that Venzor never fell asleep or left, and remained at the house the whole time, except for a brief 5- to 10-minute span during which time C.B. watched television and played cards. Cardenas admitted that he had deleted pictures from his cell phone. However, he insisted they were only pictures his coworkers had sent him of women in bathing suits that he had to delete to avoid angering Venzor. Venzor also testified in Cardenas' defense. Venzor said that on the day in question, she never fell asleep, nor did she take any of her pain medications because she had run out. Venzor suggested there was no way that Cardenas could have done what C.B. said because she could see and hear Cardenas while they were on their adjoining couches. Had she seen or known about any such abuse, she would have reported it.

After deliberating less than an hour, the jury found Cardenas guilty on both counts. On November 20, 2012, the district court subsequently denied Cardenas' motions for departure and imposed concurrent sentences of life without the possibility of parole for 25 years. Cardenas then initiated this timely appeal.

After Cardenas filed his initial brief, he moved this court to stay his appeal and remand his case to allow the district court to make additional factual findings necessary for meaningful appellate review of its denial of Cardenas' constitutional challenge to his hard 25 sentences. This court granted that motion and the district court conducted an additional hearing on that matter which was held on February 11, 2015.

4

*The Evidence Was Sufficient to Sustain the Convictions*

In his first issue on appeal, Cardenas challenges the sufficiency of the evidence to sustain his convictions. The standard of review applicable to such claims is well-established. We must determine whether all the evidence, viewed in a light most favorable to the prosecution, was sufficient for a rational factfinder to have found the defendant guilty beyond a reasonable doubt. In conducting such review, we generally are precluded from reweighing the evidence or assessing the credibility of witnesses. *State v. Williams,* 299 Kan. 509, 525, 324 P.3d 1078 (2014).

In advancing his argument, Cardenas relies primarily on *State v. Matlock,* 233 Kan. 1, 660 P.2d 945 (1983). In *Matlock*, a majority of the Supreme Court acknowledged "the uncorroborated testimony of the prosecutrix may be sufficient to convict a defendant of rape," but went on to note, "that rule has always been subject to a rule that [the] testimony must be convincing to the point that a rational factfinder could find the defendant guilty beyond a reasonable doubt." 233 Kan. at 6. Applying these "rules," the Court determined the facts in the case "cast so much doubt upon the credibility of [the accuser] that no rational factfinder could have believed her testimony and found the defendant guilty beyond a reasonable doubt." 233 Kan. at 4-6. Cardenas argues this court must similarly conclude C.B.'s testimony was so incredible and improbable as to defy belief.

Subsequently, our Supreme Court has consistently limited the reach of *Matlock.* In fact, the court has described the decision as "aberrant" and deemed it "perhaps the only case of its kind in this state where the Supreme Court directly weighed the evidence and assessed the credibility of the prosecutrix to reverse a conviction for rape." *State v. Brinklow*, 288 Kan. 39, 53, 200 P.3d 1225 (2009); see *State v. Kettler,* 299 Kan. 448, 470, 325 P.3d 1075 (2014).

5

In addition to its limited precedential value, we find *Matlock*'s aberrant review also has no place here because the case at bar is substantially distinguishable. In *Matlock*, the accuser was 22 years old, had delayed for a year in reporting she had been raped by her stepfather, and admitted her propensity to lie. Here, C.B. was 7 years old at the time of the incident, there was a delay of 1-2 days in reporting, her forensic interview was videotaped just over 1 week later, and the physical examination was conducted 10 days after the alleged rape and sodomy. The trial was not held until nearly 2 years later when C.B. was still only 9 years old. The inconsistencies and hesitancies between her original interview, which the jury had the opportunity to view, and her trial testimony were described by an expert witness as being common in such circumstances. The record discloses no admission of nor any evidence suggesting C.B. had any propensity to lie or any motive to do so. Cardenas deems "incredible" C.B.'s testimony that Venzor had taken sleeping pills and was asleep on a nearby couch while Cardenas sexually abused her, and points to Venzor's testimony of the contrary.

When we view all the evidence as a whole, in a light most favorable to the State, we are led to the conclusion neither the lack of physical evidence nor C.B.'s explainable and understandable inconsistency in her descriptions of the abuse cast so much doubt on her allegations as to render them so incredible that they must be disregarded.

Simply put, any discrepancies and weaknesses in the State's evidence emphasized here by Cardenas were matters that he brought to light during his trial and emphasized in his closing argument. It was then solely up to the jury to weigh the evidence and assess credibility. As our Supreme Court pointed out in *Kettler*, an "appellate court considers all evidence—even if there is conflicting evidence or reasons to question its credibility—and does so in the light most favorable to the State. [Citation omitted.] Factfinders—in this case the jurors, not appellate judges—make credibility determinations." 299 Kan. at 469; see also *State v. Franco*, 49 Kan. App. 2d 924, 936, 319 P.3d 551 (2014), *rev. denied* 301

6

Kan. ___ (April 29, 2015) ("Sorting out testimonial inconsistencies and evaluating credibility is a function uniquely entrusted to jurors.").

The evidence was sufficient for rational jurors to find Cardenas is guilty beyond a reasonable doubt of the rape and aggravated criminal sodomy of C.B. Cardenas is not entitled to relief on this issue.

*The District Court Did Not Abuse Its Discretion in Denying the Departure Motions*

In his second issue on appeal, Cardenas complains the district court erred by failing to understand the extent of its discretion when it denied his motions for downward departure sentences.

There is no dispute that for each of his crimes committed in September 2010, Cardenas faced a sentence under Jessica's Law of "imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years . . . ." K.S.A. 2010 Supp. 21-4643(a)(1)(B), (D). However, because these were Cardenas' first Jessica's Law offenses, the district court could depart from the hard 25 sentences if it found "substantial and compelling reasons, following a review of mitigating circumstances" to do so. See K.S.A. 2010 Supp. 21-4643(d). To that end, K.S.A. 2010 Supp. 21-4643(d)(1)-(6) set forth a nonexclusive list of mitigating factors the district court could consider when deciding whether substantial and compelling reasons existed to justify a downward departure. In *State v. Spencer*, 291 Kan. 796, 809, 248 P.3d 256 (2011), the Supreme Court held that nonexclusivity of mitigating factors listed in K.S.A. 2010 Supp. 21-4643(d) "means that the courts are free to develop additional mitigating factors on a case-by-case basis."

Before the district court, Cardenas argued at least four mitigating factors provided substantial and compelling reasons for the district court to depart first downward to the

7

guidelines and then downward to half the applicable guidelines sentence: (1) His "impressive employment record"; (2) his supportive family; (3) the fact he had no prior convictions of sex offenses; and (4) the fact he stayed in town between the time that the State voluntarily dismissed and then refiled the charges.

In framing his issue on appeal, Cardenas focuses on a single statement made by the district court in denying his departure motions wherein the court, referring to Cardenas' proposed mitigating factors, explained, "I don't minimize those statements . . . *but those are not issues under Jessica's Law to provide a substantial and compelling reason to depart from what is the mandated Jessica's* [*Law*] *sentence*." (Emphasis added.)

In this case, this court reviews the district court's determination that there were no substantial and compelling reasons to depart from the hard 25 sentences for an abuse of discretion. See *State v. Randolph*, 297 Kan. 320, 336, 301 P.3d 300 (2013). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014). Cardenas bears the burden of proving the district court abused its discretion. See *State v. Rojas-Marceleno*, 295 Kan. 525, 531, 285 P.3d 361 (2012).

In his sole argument on appeal, Cardenas contends the district court's decision is based on an error of law. Specifically, Cardenas contends the district court's above-emphasized reason for denying his departure motions shows the district court erroneously believed it could not, as a matter of law, consider the nonstatutory mitigating factors cited by Cardenas, thereby abusing its discretion.

The State counters that Cardenas misinterprets the district court's reasoning, suggesting that in making the emphasized comments, the district court was simply

8

finding the mitigating factors cited by Cardenas were not enough to constitute substantial and compelling reasons to justify a departure sentence.

A review of the entire sentencing record constrains us to agree with the State. In proposing the mitigating factors, Cardenas' counsel merely stated them to the court in a summary manner, without suggestion of how such factors were relevant to the crimes of which Cardenas had been convicted. Counsel cited no supportive authority to the district court nor did he present any evidence at the sentencing hearing. The primary focus of Cardenas' sentencing arguments was his continued claim of innocence. The State, on the other hand, pointed out that once the district court has determined whether mitigating factors existed, it must still determine whether there was a substantial and compelling reason to depart. The State called the court's attention to *Spencer*, 291 Kan. 796, supporting a suggestion that the factors relied on by Cardenas—work history, family issues, and no prior sex offenses against children—did not rise to the level the district courts have been upholding in these types of cases.

Prior to the imposition of the sentence and ruling upon Cardenas' motions for departure, the district court stated: "I have read all of the motions that have been filed, the responses that have been filed. I've heard the arguments of counsel this morning. And I reviewed the presentence investigation. All of which will be considered by this Court in determining a fair, just, and appropriate sentence."

The district court then accorded to Cardenas an opportunity to speak on his own behalf. After listening to Cardenas' statement, the district court prefaced the imposition of the sentence by noting:  "The Court must further determine whether or not there are substantial and compelling reasons to depart from a Jessica's Law sentence." The district court then reviewed on the record each of the proposed mitigating factors and Cardenas' criminal history score of B.

9

There is nothing in the court's ruling and conclusion, as above cited, which suggests to us that the district court did not understand the breadth of its discretion or that it made any error of law by disregarding Cardenas' proposed mitigating factors. A fair and reasonable interpretation of the district court's rulings, taken in context, leads us to the conclusion that the district court evaluated the arguments of Cardenas and of the State, and rejected Cardenas' position, determining the factors relied upon did not establish "substantial and compelling reasons to depart." We affirm that judgment.

We note that Cardenas has focused his argument solely upon the alleged error of law and has not otherwise challenged the denial of his departure motion. However, we would point out parenthetically that the discretion of the district courts to deny departure motions premised upon similar arguments as advanced by Cardenas have been affirmed in a number of recent cases which lend further credence to the district court's determination here. See *e.g.*, *State v. Mason*, 294 Kan. 675, 679, 279 P.3d 707 (2012) (discussing family support in affirming denial of departure); *Spencer*, 291 Kan. at 814 (the State cited to the district court, discussing both lack of criminal history and family support issues, among others); *State v. Trevino*, 290 Kan. 317, 322-23, 227 P.3d 951 (2010) (no abuse of discretion was found despite the defendant's lack of significant criminal history); *State v. Melton*, No. 109,884, 2014 WL 4231240, at *3-4 (Kan. App. 2014) (unpublished opinion) (an unpublished but persuasive decision by a panel of this court; denial of departure was affirmed despite testimony from family, psychological opinion evidence, and other mitigating circumstances), *rev. denied* 302 Kan. ___ (July 21, 2015).

Finally, we note the abuse of discretion standard so succinctly stated in *State v. Florentin,* 297 Kan. 594, 602, 303 P.3d 263 (2013): "Even though we might individually disagree with the district judge's decision, we cannot say that the district court judge is the only reasonable person who would deny Florentin's motion for departure." The district court's determination in this case clearly passes this test.

*The District Court Did Not Abuse Its Discretion in Ordering Payment of the BIDS Administrative Fee*

In his third issue on appeal, Cardenas complains the district court also abused its discretion in ordering him to pay a $100 application fee to the Board of Indigents' Defense Services (BIDS) for the appointment of his trial counsel. The State correctly responds that the district court properly determined the propriety of imposing the BIDS application fee at the time of appointing counsel, and nothing indicates error in the court's failure to *sua sponte* waive the enforcement of the fee at sentencing.

Courts are afforded "considerable discretion" in determining the amount of the BIDS application fee a defendant must pay. *State v. Phillips*, 289 Kan. 28, 42, 210 P.3d 93 (2009). Thus, this court reviews the district court's imposition of the BIDS application fee for an abuse of discretion.

The district court ordered Cardenas to pay the BIDS application fee under the authority of K.S.A. 22-4529, which provides today, as it did then:

> "Any defendant entitled to counsel pursuant to K.S.A. 22-4503 . . . shall pay an application fee in the amount of . . . $100 . . . to the clerk of the district court. If it appears to the satisfaction of the court that payment of the application fee will impose manifest hardship on the defendant, the court may waive payment of all or part of the application fee."

In *State v. Casady*, 289 Kan. 150, 152-59, 210 P.3d 113 (2009), our Supreme Court interpreted how this statutory language operates within constitutionally permissible boundaries. Pertinent here, the *Casady* court explained:

"[T]he application fee is typically assessed at first appearances or initial docket calls, proceedings not designed to address factual or legal issues. First appearances and docket calls are multifaceted, expedited proceedings. They are designed to apprise defendants of the charges on which they are being detained; to set bonds, conditions of release, and future court dates; and to appoint counsel, which includes assessing the BIDS application fees.

"The BIDS application fee is constitutional so long as safeguards are in place to protect an indigent defendant's access to counsel. A district court is to determine the propriety of imposing the K.S.A. 22-4529 application fee at the time of the initial determination to appoint counsel. This assessment determination does not require any subsequent findings by the district court. In order to comport with constitutional standards, however, any enforcement of the obligation to pay the fee is to be deferred until the conclusion of proceedings in district court. If the defendant raises the issue of the ability to pay and demonstrates circumstances that preclude payment of the application fee, the district court may reduce or waive a previously imposed application fee." 289 Kan. at 158-59.

Though he never challenged below the order that he pay the $100 BIDS application fee, Cardenas now argues the district court failed to recognize that it had the discretion to waive the fee, *i.e.*, abused its discretion by failing to recognize it had the discretion in the first place. In support, Cardenas notes that after sentencing him, the district court found he lacked the financial resources to reimburse the BIDS attorney fees. According to Cardenas, the district court "apparently believed the application fee was required and made no [concomitant] effort to exercise his discretion or consider the hardship" that fee would impose on Cardenas.

A careful review of the record does not support Cardenas' interpretation of the district court's order that he pay the BIDS application fee. At the time of his first appearance in July 2011, Cardenas admittedly had a good job. The district court ordered him to pay the administrative fee shortly thereafter when Cardenas submitted an application for court-appointed counsel. At Cardenas' sentencing in November 2012, the

12

district court did waive Cardenas' obligations to reimburse BIDS attorney fees under K.S.A. 22-4513(b), finding that "imposing a requirement to pay BIDS attorney fees" in light of "the length of incarceration without any potential for income earnings . . . would represent a severe financial hardship." However, such a finding required by K.S.A. 22-4513(b) to waive BIDS attorney fees does not, as Cardenas seems to suggest here, automatically correlate with a need to waive the BIDS application fee for those services under K.S.A. 22-4529. See *State v. Osuna*, No. 111,206, 2014 WL 5347584, at *2 (Kan. App. 2014) (unpublished opinion) (distinguishing between waiver of BIDS attorney fees and request that BIDS application fee be reduced or modified), *rev. denied* 302 Kan. ___ (July 24, 2015).

Cardenas never argued below that payment of the $100 BIDS application fee would impose a manifest hardship upon him, and our record lacks support for his contention the district court was under a mistaken belief that it could not as a matter of law also waive the application fee. This case is closely analogous to both *Casady* and *Osuna*; just as in those cases, the district court here "simply chose to waive one fee and not the other." *Osuna*, 2014 WL 5347584, at *2 (citing *Casady*, 289 Kan. at 151).

The order that Cardenas pay the BIDS application fee was not an abuse of discretion, and Cardenas is not entitled to relief on this issue.

*Cardenas' Hard 25 Sentences Are Constitutional*

Cardenas' remaining argument challenges the district court's denial on remand of his case-specific challenge to his hard 25 sentences under the Eighth Amendment of the United States Constitution and § 9 of the Kansas Constitution Bill of Rights.

Generally speaking, "constitutional challenges to a statute raise questions of law subject to unlimited appellate review. [Citation omitted.]" *State v. Seward*, 289 Kan. 715,

13

718, 217 P.3d 443 (2009). Here, however, the district court made specific findings of fact and conclusions of law in support of its denial of Cardenas' case-specific constitutional challenge to his hard 25 sentences. This court reviews those findings and conclusions under a bifurcated standard. This court reviews the district court's factual findings—without reweighing the evidence—to assure they are supported by substantial competent evidence. *State v. Seward*, 296 Kan. 979, 981, 297 P.3d 272 (2013). Substantial evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012). This court conducts de novo review of the trial court's legal conclusions drawn from those facts. *Seward*, 296 Kan. at 981.

We begin with Cardenas' challenge under § 9 of the Kansas Constitution Bill of Rights, which prohibits the infliction of "cruel or unusual punishment" upon persons convicted of crimes. The district court imposed the hard 25 sentences required by K.S.A. 2010 Supp. 21-4643(a)(1)(B) and (D) after concluding there were no substantial and compelling reasons for a departure. To succeed on his § 9 challenge to those sentences, Cardenas must establish his punishment is "'so disproportionate to'" his crimes that they "'shock[ ] the conscience and offend[ ] fundamental notions of human dignity.' [Citation omitted.]" *Seward*, 296 Kan. at 982.

To determine whether a lengthy sentence violates § 9, we apply the test set forth in *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), weighing the following factors:

> "(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

14

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." *Freeman*, 223 Kan. at 367.

No one factor controls the outcome. *Seward*, 296 Kan. at 982. It is possible, however, that "one factor may weigh so heavily that it directs the final conclusion. [Citation omitted.]" *State v. Newcomb*, 296 Kan. 1012, 1017, 298 P.3d 285 (2013).

At the close of the hearing on remand, the district court separately addressed each of these *Freeman* factors in support of its denial of Cardenas' constitutional challenge. The parties' arguments and district court's conclusions as to each factor are reviewed here in sequential order.

*First* Freeman *factor*:  *Nature of the Offense and the Character of the Offender*

To demonstrate his character in the most positive light, Cardenas highlighted the same factors he cited in support of his motions for departure:  his impressive employment history, his supportive family, his lack of prior convictions of offenses of a sexual nature, and the fact that he remained in the area without any further legal problems between the time that the State voluntarily dismissed the original charges in October 2010 and refiled the case in June 2011. Turning to the nature of the offenses, Cardenas continued to profess his innocence and highlighted weaknesses in the State's case as already discussed above in addressing Cardenas' challenge to the sufficiency of the evidence. Cardenas also pointed out that neither Butterworth nor C.B. ever responded to the State's victim advocate, returned a victim statement to the court services officer conducting Cardenas' presentence investigation, or sought restitution. In closing, Cardenas distinguished himself "from the typical Jessica's Law offender" toward whom the penological interest

15

of Jessica's Law is directed, arguing that in his case there was no physical injury or mental trauma to C.B., nor did he abuse a position of authority or commit any crime of a violent nature.

The State urged the district court to disregard Cardenas' attempts to downplay the seriousness of his rape and aggravated criminal sodomy offenses against 7-year-old C.B. while she was left in his care. In support, the State reiterated the facts supporting Cardenas' convictions. The State also argued Cardenas' lack of remorse for his actions, "paired with the fact that this offense was committed while there were other adults around" demonstrated a "brazen approach" with a "very high" degree of danger, which is precisely the type of offender from whom Jessica's Law seeks to protect the public.

In denying Cardenas' constitutional challenge to his hard 25 sentences, the district court first recited and reviewed the mitigating circumstances argued by Cardenas. However, the district court agreed with the State's position on the nature of the offense, the extent of culpability for resulting mental injuries, and the penological purposes of the prescribed punishment. In that regard, the district court highlighted young C.B.'s largely consistent recitation of the facts of the crime to her mother, again during the forensic interview, and yet again in her trial testimony. The district court also found that Cardenas' invasion of C.B.'s "personal sanctity" is something she must "live with for the rest of her life." The district court further concluded Cardenas violated his position of trust as a babysitter. As for Cardenas' lack of expressed remorse, the district court found this was "not consistent with the claim of innocence," and held it must be considered "in determining the degree of dangerousness that Mr. Cardenas represents to society." And finally, the district court found Cardenas' conduct "dangerous to society," including young children and "the public as a whole," and "[t]he penological purpose of Jessica's [L]aw is to protect and promote community safety through confinement." Accordingly, the district court concluded Cardenas' confinement for life without the possibility of

16

parole for 25 years does not shock the conscience and offend fundamental notions of human dignity.

In his appellate challenge to the district court's finding that the first *Freeman* factor did not weigh in his favor, Cardenas does not contest the factual underpinnings of the district court's orders but rather focuses only on the district court's finding that his lack of remorse was inconsistent with his claim of innocence. According to Cardenas, "[i]n essence, the district court penalized [him] for not confessing and obliging the government to fulfill its duty to hold a jury trial," which he argues is "a factor this Court must find cannot weigh against convicted offenders."

However, our Supreme Court recently determined that a lack of remorse is relevant to the first *Freeman* factor. See *State v. Swint,* 302 Kan. 326, 352 P.3d 1014 (2015). In *Swint* the sentencing court had commented upon the defendant's lack of acceptance of responsibility or remorse for his actions in finding the first factor weighed in favor of finding the defendant's hard 25 sentence constitutional. 302 Kan. at 343. In reviewing that decision, our Supreme Court stated:

> "[A]lthough this court has yet to address whether the quality of evidence is relevant in this context, it is logically inconsistent to consider the defendant's possible innocence when analyzing proportionality of a criminal sentence because the determination of guilt was for the finder of fact. It also does not appear this court has addressed a defendant's lack of remorse in a *Freeman* case, but this court has approved lack of remorse as appropriate for consideration in criminal sentences in cases prior to the comprehensive sentencing guidelines. See *State v. Hemby*, 264 Kan. 542, 553, 957 P.2d 428 (1998)." *Swint*, 302 Kan. at 343.

The district court did not err by considering Cardenas' lack of remorse in this context.

17

Accordingly, we hold the district court's findings are supported by substantial competent evidence and support the legal conclusion that this first *Freeman* factor weighs against Cardenas' contention that his hard 25 sentences are unconstitutional under § 9.

*Second* Freeman *Factor: Comparison of Punishment for More Serious Offenses and Third* Freeman *Factor: Comparison of Punishment in Other Jurisdictions*

We first note the parties conceded in the district court that the Kansas Supreme Court had decided these issues contrary to Cardenas' position. In *Seward*, the court held that hard 25 life sentences for conviction of rape and aggravated criminal sodomy under Jessica's Law are not disproportionately harsh when compared to other offenses. 296 Kan. at 988. The *Seward* court also concluded "that Kansas does not have the harshest penalties in the nation for the crimes of rape and aggravated criminal sodomy committed by an adult against a child younger than 14." 296 Kan. at 990.

The district court acknowledged the concession and agreed that the second and third *Freeman* factors had already been decided against Cardenas and, accordingly, no other evidence was presented on those issues at the hearing on remand.

To the extent Cardenas now argues otherwise, we reject his position for two reasons. First, Cardenas cannot concede an issue below and then argue the contrary on appeal. See *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). Second, absent some indication from our Supreme Court of intent to depart from its position in *Seward,* we are bound to follow that precedent. See *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128, *rev. denied* 302 Kan. ___ (September 14, 2015).

We further note that Cardenas now raises a different constitutional challenge than he raised in the district court. Rather than attacking the incarceration element of the hard 25 life sentences, he now challenges the postimprisonment element of lifetime parole, a

separate and distinct issue. Since this issue was not presented at the remand hearing, the district court had no opportunity to consider or rule on this issue. Cardenas has not complied with Kansas Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41), which requires an appellant to explain why an issue not raised below is properly before an appellate court. Our Supreme Court has recently confirmed that appellate courts will no longer consider new constitutional issues for the first time on appeal absent such compliance. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015).

Cardenas has thus failed to establish how the district court erred in concluding that the second and third *Freeman* factors did not weigh in his favor. Since all three factors weigh against him, Cardenas is not entitled to relief on his case-specific challenge to his hard 25 sentences under § 9 of the Kansas Constitution Bill of Rights.

Although Cardenas also challenged the constitutionality of his hard 25 sentences under the Eighth Amendment of the United States Constitution before the district court, he has not briefed that issue on appeal. Rather, he only incidentally identifies the issue and later suggests in his § 9 analysis that the "first *Freeman* factor requires the same analysis in the federal, case-specific challenge comparing the gravity of the offense and the severity of the sentence." A point raised incidentally in a brief and not argued therein is deemed abandoned. *State v. Llamas*, 298 Kan. 246, 264, 311 P.3d 399 (2013). In any event, the Kansas Supreme Court has already decided the issue contrary to Cardenas' position. See *Swint*, 302 Kan. at 347-49; *Seward,* 296 Kan. at 990-91. Cardenas is not entitled to relief on this issue.

Affirmed.