IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,035

MICHAEL CREECY,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

SYLLABUS BY THE COURT

1.

A party to a court action must show that he or she has standing to seek the requested relief, both under the applicable statutory provisions and under traditional, common-law principles. In order to have traditional standing, a party must show a cognizable injury and establish a causal connection between the injury and the challenged conduct.

2.

A person does not have a right to a driver's license, but once he or she has a license, the person is entitled to procedural due process before the license is suspended or revoked.

3.

The $50 fee assessed under K.S.A. 2014 Supp. 8-1020(d)(2) is unconstitutional on its face because it requires a payment of a fee, without provision for indigency, before a motorist can obtain the procedural due process to which he or she is entitled before a driver's license is suspended or revoked.

1

4.

A law enforcement officer who personally hands a form DC-27 notice of suspension of driving privileges to a motorist that failed to complete a breath test, who permits the motorist to read the form, and who subsequently places the form with the motorist's other property has complied with the personal service requirement of K.S.A. 2014 Supp. 8-1002(c).

5.

Under K.S.A. 2014 Supp. 8-1001(q), a motorist has the burden to prove that his or her inability to successfully complete a post-DUI breath test was due to a medical condition that was not caused by alcohol or drugs.

6.

An implied consent advisory that mirrors statutory language is legally sufficient to advise a motorist of the consequences of refusing or failing to submit to a postarrest breath test.

7.

The term "evidentiary test" is sufficient to distinguish a postarrest breath test from a preliminary breath test; an implied consent advisory that uses the term "evidentiary test" sufficiently complies with statutory notice requirements.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 15, 2017. Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed August 23, 2019. Judgment of the Court of Appeals affirming the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part, reversed in part, and remanded with directions.

*Jay Norton*, of Norton Hare, L.L.C., of Overland Park, argued the cause and was on the brief for appellant.

*Dwight R. Carswell*, assistant solicitor general, argued the cause, and *Adam D. King*, of Kansas Department of Revenue, *Bryan C. Clark*, assistant solicitor general, *Toby Crouse*, solicitor general, and *Jeffrey A. Chanay*, chief deputy attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Michael Creecy seeks our review of the Court of Appeals' decision to affirm the district court's upholding the suspension of Creecy's driver's license by the Kansas Department of Revenue (KDR). Creecy first challenges the constitutionality of K.S.A. 2014 Supp. 8-1020(d)(2), which requires a motorist whose driver's license has been confiscated by a law enforcement officer as a consequence of a driving under the influence (DUI) arrest to pay a $50 fee in order to be granted an administrative hearing on the propriety of the license deprivation. Further, Creecy argues his driver's license suspension must be reversed because: (1) the arresting officer failed to comply with the personal service requirements of K.S.A. 2014 Supp. 8-1001(c); (2) Creecy's inability to complete the breath test due to a medical condition did not qualify as a test refusal for driver's license suspension purposes; and (3) the arresting officer failed to comply with the statutorily mandated implied consent advisories.

We agree with Creecy's contention that K.S.A. 2014 Supp. 8-1020(d)(2)'s monetary requirement to obtain a due process hearing, without any exception for the indigency of the licensee, renders that provision facially unconstitutional. The remedy, however, is not a restoration of Creecy's driving privileges, but rather a refund of the $50 fee. Because we find no merit to Creecy's other claims, we affirm the suspension of his driver's license.

FACTUAL AND PROCEDURAL OVERVIEW

There is no dispute that police had probable cause to arrest Creecy for DUI in October 2014. After being taken to the Gardner Police Department for processing and testing, Creecy began to have difficulty breathing. Officer David Rollf called emergency medical personnel, who attended to Creecy and administered oxygen. Creecy appeared to recover and declined to go to the hospital.

Officer Rollf began the procedure to conduct a postarrest test for blood alcohol content (BAC) with the Intoxilyzer 8000 breath testing machine. Officer Rollf gave Creecy the implied consent advisories required by K.S.A. 2014 Supp. 8-1001(k), both orally and using the DC-70 written form, advising Creecy of his rights and potential penalties for failure or refusal.

Creecy attempted to provide a breath sample twice, but he was unable to provide breath in a sufficient amount for the machine to register a successful test. During the attempts, he displayed outward physical signs that he was having difficulty providing the breath samples. After the second unsuccessful attempt, Officer Rollf told Creecy that his failure to provide a measurable breath sample was considered a test refusal. Officer Rollf completed the Officer's Certification and Notice of Suspension form—Form DC-27— notifying Creecy that his license was being administratively suspended for refusal of a BAC test, handed it to Creecy, and prepared to take Creecy to the Johnson County Jail.

As Creecy stood up he had another medical episode, falling to the floor and jerking violently. Medical personnel again attended to Creecy, and he regained consciousness after approximately one minute. Eventually Creecy was put on an ambulance and taken to a hospital. Officer Rollf told Creecy that he would give him a

4

ticket, instead of taking him to jail, and that all of his paperwork, including the DC-27 form, would be with Creecy's belongings.

Creecy requested an administrative hearing, pursuant to K.S.A. 2014 Supp. 8-1020(a)(1), to challenge the suspension of his driver's license. Creecy paid a $50 administrative fee, required by K.S.A. 2014 Supp. 8-1020(d)(2), to obtain administrative review. The Kansas Department of Revenue (KDR) administrative law judge affirmed the suspension, and Creecy petitioned for de novo review in Johnson County District Court. After a hearing in June 2016, Johnson County District Judge James Vano affirmed the suspension.

Creecy timely appealed the district court's decision, arguing: (1) Creecy did not refuse the breath test because his failure to complete the test was caused by a medical condition; (2) any refusal was immediately rescinded; (3) the implied consent advisories did not substantially comply with the applicable statutes; (4) Creecy did not receive personal service of the DC-27 certification and notice; and (5) the requirement to pay a $50 fee per K.S.A. 2014 Supp. 8-1020(d)(2) to get an administrative hearing is unconstitutional.

The Court of Appeals affirmed the district court. *Creecy v. Kansas Dept. of Revenue*, No. 117,035, 2017 WL 6397038, at *7 (Kan. App. 2017) (unpublished opinion). The panel accepted the district court's analysis of the evidence that refuted Creecy's claim that he was having an asthma attack that prevented completion of the breath test and determined the evidence did not support that Creecy asked for a third test attempt. 2017 WL 6397038, at *2-3. It determined that the DC-70 form substantially complied with the law despite "tend[ing] towards the obscure." 2017 WL 6397038, at *4. Applying a substantial compliance test, the panel opined that the DC-27 was personally served on Creecy. 2017 WL 6397038, at *4-5. Finally, the panel determined that the $50

5

fee was not categorically unconstitutional, albeit the panel expressly indicated that "[t]he constitutionality of the lack of a bypass for indigents is not before us." 2017 WL 6397038, at *5-7.

In his petition for review, Creecy does not raise the issue of rescission of test refusal, accordingly that issue is not considered herein. Supreme Court Rule 8.03(a)(4)(C) (2018 Kan. S. Ct. R. 53).

CONSTITUTIONALITY OF MANDATORY FEE FOR DUE PROCESS HEARING

Creecy first challenges K.S.A. 2014 Supp. 8-1020(d)(2)'s mandatory fee as an unconstitutional barrier to the exercise of a driver's license holder's right to due process upon the government's seizure of that property. Before addressing that question, we pause to review Kansas' implied consent statutory scheme, which will be relevant to all of Creecy's issues.

Pursuant to K.S.A. 2014 Supp. 8-1001(a) any person operating a vehicle in this State is deemed to have given consent to submit to testing to determine the presence of alcohol or drugs. Among other things, an officer is required to request that a person submit to a test after the driver has been arrested or taken into custody for DUI. K.S.A. 2014 Supp. 8-1001(b)(1)(A).

This postarrest evidentiary test is distinguished from a preliminary breath test (PBT), which may be used to help an officer determine whether to make a DUI arrest, and which has limited admissibility in later proceedings. K.S.A. 2014 Supp. 8-1012(d). The definition of a postarrest test refusal specifically excludes refusal to submit to a PBT. K.S.A. 2014 Supp. 8-1013(i).

6

Before administering the postarrest test, an officer must give oral and written advisories of the various rights and notices of the implied consent law. K.S.A. 2014 Supp. 8-1001(k). The written form is known as a DC-70.

If a person refuses to submit to a test, or fails to complete one, his or her driver's license will be suspended for one year. K.S.A. 2014 Supp. 8-1001(k)(5). A person's inability to successfully complete a test is considered a test refusal unless the person can show that the failure was due to a medical condition not caused by drugs or alcohol. K.S.A. 2014 Supp. 8-1001(q).

In the event of a test refusal, an officer must prepare an officer's certification of test refusal and notice of license suspension. K.S.A. 2014 Supp. 8-1002. The written form is known as a DC-27. The officer must provide personal service of the DC-27 to the motorist. K.S.A. 2014 Supp. 8-1002(c).

A person whose license has been suspended may request an administrative hearing within 14 days of service of the DC-27. K.S.A. 2014 Supp. 8-1020(a)(1). The person is required to pay a $50 fee for the hearing. K.S.A. 2014 Supp. 8-1020(d)(2). There is no provision for a waiver of the fee or for any delay in the payment of the fee in the event the person is indigent and there is no mechanism for a refund in the event the law enforcement officer wrongfully deprived the person of his or her license. Specifically, the fee provision states:

> "The division shall charge a fee of $50 for a hearing, to be paid within the time
> period for making a timely request for a hearing, whether held by telephone or in person,
> to be applied by the division for administrative costs to conduct the hearing. The division
> shall remit all hearing fees to the state treasurer in accordance with the provisions of
> K.S.A. 75-4215, and amendments thereto. Upon receipt of each such remittance, the state
> treasurer shall deposit the entire amount in the state treasury to the credit of the division

7

of vehicles operating fund. The hearing fee established in this section shall be the only fee collected or moneys in the nature of a fee collected for such hearing. Such fee shall only be established by an act of the legislature and no other authority is established by law or otherwise to collect a fee." K.S.A. 2014 Supp. 8-1020(d)(2).

After the administrative hearing order, a person may request de novo review of that order by the district court. K.S.A. 2014 Supp. 8-1020(o). Review is in accordance with the implied consent statutes and the Kansas Judicial Review Act (KJRA). K.S.A. 2014 Supp. 8-1020(p).

*(a) Standing*

As a preliminary matter, we address the KDR's assertion that Creecy does not have standing to challenge the statute. The agency argues that Creecy paid the fee and had an administrative hearing, and, therefore, he suffered no injury by the statute's failure to contain any bypass provision for indigent licensees. Creecy argues that the act of charging any fee as a precondition to gaining administrative review violates due process and is thus unconstitutional.

*Standard of Review*

The requirement that a party have standing is a component of subject matter jurisdiction, which may be raised at any time, including upon the court's own motion. *Sierra Club v. Moser*, 298 Kan. 22, 29, 310 P.3d 360 (2013). Jurisdiction may not be waived. *Friedman v. Kansas State Bd. of Healing Arts*, 287 Kan. 749, 752, 199 P.3d 781 (2009). Standing is a question of law subject to unlimited review. *Sierra Club*, 298 Kan. at 29; *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 185, 106 P.3d 483 (2005).

*Analysis*

The requirement that a party must have standing is the first factor in the requirement that a matter must be justiciable—the party must present an actual case or controversy under the judicial power clause of Article 3, § 1 of the Kansas Constitution. *Sierra Club*, 298 Kan. at 29; *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 895-96, 179 P.3d 366 (2008). See also *Solomon v. State*, 303 Kan. 512, 521, 364 P.3d 536 (2015) (recognizing that under Kansas law, the case or controversy requirement means that (1) a party must have standing; (2) the issue cannot be moot; (3) the issue must be ripe; and (4) the issue cannot present a political question). A party without standing is essentially asking a court to render an advisory opinion, which would violate the separation of powers doctrine embodied in the Kansas constitutional framework. *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 750, 189 P.3d 494 (2008); *Sebelius*, 285 Kan. at 898.

Review of a KDR administrative driver's license suspension falls within the purview of the KJRA. K.S.A. 2014 Supp. 8-1020(p). Therefore, a party must show that he or she has standing both under the statutory provisions of the KJRA and traditional, common-law standing. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 908, 416 P.3d 999 (2018); *Bremby*, 286 Kan. at 750; *Families Against Corporate Takeover v. Mitchell*, 268 Kan. 803, 807, 1 P.3d 884 (2000) (*FACT*); *City of Derby v. State ex rel. Jordan*, No. 117,165, 2018 WL 3673253, at * 2 (Kan. App. 2018) (unpublished opinion).

*Statutory standing*

K.S.A. 77-611 provides:

"The following persons have standing to obtain judicial review of final or nonfinal agency action:

"(a) A person to whom the agency action is specifically directed;

"(b) a person who was a party to the agency proceedings that led to the agency action;

"(c) if the challenged agency action is a rule and regulation, a person subject to that rule; or

"(d) a person eligible for standing under another provision of law."

KDR does not argue that Creecy lacks standing under this statute. Obviously, subsections (a) and (b) encompass Creecy.

*Traditional standing*

Even if a party has statutory standing, the party must also have traditional or common-law standing to challenge a statute's constitutionality. *T.M.M.H.*, 307 Kan. at 908. In order to have traditional standing, a person must "show a cognizable injury and establish a causal connection between the injury and the challenged conduct." *Sierra Club*, 298 Kan. at 33; see *Bremby*, 286 Kan. at 761; *Harrison v. Long*, 241 Kan. 174, 176-77, 734 P.2d 1155 (1987). In order to show a cognizable injury, "'a party must establish a personal interest in a court's decision and that he or she personally suffers some actual or threatened injury as a result of the challenged conduct.'" *Gannon v. State*, 298 Kan. 1107, 1123, 319 P.3d 1196 (2014) (quoting *Sierra Club*, 298 Kan. at 33).

KDR argues essentially that Creecy has no standing because he is challenging the statute's constitutionality on behalf of hypothetical indigent third parties and that he

personally was not harmed because he paid the fee and received his hearing. But that is not the question presented. Creecy is challenging the facial constitutionality of the statute because he argues that it is unconstitutional to charge a fee as a precondition to obtaining due process of law in the form of administrative review. Under this argument, it would make no difference whether Creecy was wealthy or a pauper—the harm suffered is measured by the barrier to due process, and not measured by the impact it had on his pocketbook.

Moreover, the fact that Creecy paid the fee and obtained the administrative hearing does not, as a matter of law, negate that the fee caused a cognizable injury. Given the importance of a driver's license to daily life, one can perceive a circumstance in which a licensee would forego paying for other essentials in order to pay the fee, resulting in a cognizable injury.

Accordingly, we find that Creecy has standing to challenge the constitutionality of K.S.A. 2014 Supp. 8-1020(d)(2).

*(b) Merits of Constitutional Challenge*

*Standard of Review*

The constitutionality of a statute is a matter of law subject to unlimited review. *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 789, 189 P.3d 508 (2008). An appellate court will endeavor to find a reasonable way in which to construe a statute as constitutionally valid. 286 Kan. at 789. See *KNEA v. State*, 305 Kan. 739, 749-50, 387 P.3d 795 (2017); *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 369, 361 P.3d 504 (2015); *Leavenworth County v. Miller*, 7 Kan. 479, 498-99 (1871). The burden is on the party

asserting unconstitutionality. *Barrett v. U.S.D. No. 259*, 272 Kan. 250, 256, 32 P.3d 1156 (2001).

*Analysis*

Creecy argues that the $50 fee requirement of K.S.A. 2014 Supp. 8-1020(d)(2) is unconstitutional on its face. He claims that he was entitled to an administrative review of his driver's license suspension as a matter of right and that a fee in any amount is a violation of due process.

A civil litigant's right to due process is grounded in the Fifth and Fourteenth Amendments of the United States Constitution and Section 18 of the Kansas Constitution Bill of Rights. *In re J.D.C.*, 284 Kan. 155, 166, 159 P.3d 974 (2007). Due process may refer to substantive due process, which protects individuals from arbitrary state action, or procedural due process, which at its core protects the opportunity to be heard in a meaningful time and manner. *State v. Robinson*, 303 Kan. 11, 175, 363 P.3d 875 (2015) (substantive due process), *disapproved of on other grounds by State v. Cheever*, 306 Kan. 760, 402 P.3d 1126 (2017); *J.D.C.*, 284 Kan. at 166 (procedural due process) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 [1976]).

In determining whether administrative procedural protections satisfy due process requirements, under the factors set forth in *Mathews*, a court considers (1) the individual interest at stake; (2) the risk of erroneous deprivation of the interest; and (3) the State's interest in the procedures used. 424 U.S. at 334-35. The United States Supreme Court has applied this test to driver's license suspension proceedings. *Mackey v. Montrym*, 443 U.S. 1, 10, 99 S. Ct. 2612, 61 L. Ed. 2d 321 (1979).

12

There is no dispute that a driver's license is some type of interest which is entitled to procedural due process protections before revocation or suspension. *Kempke v. Kansas Dept. of Revenue*, 281 Kan. 770, 776, 133 P.3d 104 (2006). This court has often characterized a driver's license as a "privilege, not a right." *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 632-33, 176 P.3d 938 (2008) (driver's license is a regulated privilege), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 350 P.3d 1048 (2015); *Kempke*, 281 Kan. at 799 (administrative hearing plus de novo district court review affords due process protections to driving privileges); *State v. Heironimus*, 262 Kan. 796, 803, 941 P.2d 1356 (1997) ("We consider possession of a driver's license a regulated privilege protected by due process but not an inherent fundamental right."); *Standish v. Department of Revenue*, 235 Kan. 900, 904, 683 P.2d 1276 (1984) (right to drive vehicle on public streets is not a natural right but a privilege, subject to reasonable regulation). In other words, a person is not entitled to a driver's license, but once a person has a license, he or she is entitled to due process before it is taken away—Supreme Court and Kansas caselaw establish that driver's license suspension proceedings require procedural due process. E.g., *Bell v. Burson*, 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971) ("This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.'"); *Kempke*, 281 Kan. at 776 ("A person's entitlement to due process in drivers' license suspension cases is well-settled."). The relevant inquiry is what amount of process is due.

The dispute here is not whether Creecy was entitled to due process or even whether Creecy received the hearing to which he was entitled. The dispute is whether his due process rights were violated by the imposition of a nonrefundable $50 fee before obtaining administrative review.

13

The imposition of a fee for administrative review is not, in itself, a violation of due process. The United States Supreme Court has long held that courts may enact "reasonable procedural requirements for triggering the right to an adjudication, be they statutes of limitations, or, in an appropriate case, *filing fees*. [Citations omitted]." (Emphasis added.) *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982).

However, where a fundamental right or interest is implicated, allowances may need to be made for indigent litigants. For example, a statute imposing a fee on parties seeking divorce proceedings, which had no provision for indigency, was deemed a violation of due process because of the fundamental nature of the marriage relationship. *Boddie v. Connecticut*, 401 U.S. 371, 382-83, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971). Likewise, recognizing the fundamental interest at stake in parental rights' termination cases, the State may not bar access to an appeal of termination of parental rights based on ability to pay. *M.L.B. v. S.L.J.*, 519 U.S. 102, 107, 124, 128, 117 S. Ct. 555, 136 L. Ed. 2d 473 (1996).

In other instances, when fundamental rights are not implicated, the assessment of a fee without a provision for indigency or waiver has been upheld. See, e.g., *United States v. Kras*, 409 U.S. 434, 446, 93 S. Ct. 631, 34 L. Ed. 2d 626 (1973) (upholding filing fee imposed as precondition to being granted bankruptcy discharge because "[t]here is no constitutional right to obtain a discharge of one's debts in bankruptcy"); see also *Ortwein v. Schwab*, 410 U.S. 656, 658-60, 93 S. Ct. 1172, 35 L. Ed. 2d 572 (1973) (upholding $25 fee for welfare beneficiaries seeking appellate review of reductions in their benefits). Pointedly, however, the *Ortwein* Court noted that the appellants had already received an agency review before the appeal, suggesting that a person only gets one due process proceeding as a matter of right. 410 U.S. at 659.

Even in criminal matters, where the right to counsel is not only a matter of due process but also guaranteed under the Sixth Amendment, an assessment of fees may be permissible. Although not strictly analogous, because it involves fees for the cost of representation as opposed to fees for the cost of the court hearing itself, in *State v. Casady*, 289 Kan. 150, 210 P.3d 113 (2009), this court considered a constitutional due process challenge to K.S.A. 22-4529, the statute mandating the imposition of the application fee for the Kansas Board of Indigents' Defense Services (BIDS). The court found that the fee was constitutional, even though the underlying right implicated was one as fundamental as an indigent defendant's right to effective assistance of counsel, in large part because the statute included safeguards to protect the indigent's right to counsel. 289 Kan. at 158. The statute expressly included a mechanism by which a court had discretion to grant a waiver of the $100 application fee if the imposition would "'impose manifest hardship.'" 289 Kan. at 152. See also *State v. Robinson*, 281 Kan. 538, 547-48, 132 P.3d 934 (2006) (sentencing court's failure to assess validity of BIDS fees did not violate due process).

KDR draws our attention to appellate decisions from sister jurisdictions where courts have upheld the imposition of a fee to obtain a review of driver's license suspensions. Both Washington and California courts have upheld a fee charged for administrative review of a driver's license suspension. *Didlake v. Washington State*, 186 Wash. App. 417, 426, 345 P.3d 43 (2015); *Nick v. Department of Motor Vehicles*, 12 Cal. App. 4th 1407, 1416-17, 16 Cal. Rptr. 2d 305 (1993) (required payment of witness fee in order to compel officer to testify at license suspension hearing did not violate due process). A distinguishing feature of both cases, however, is that the applicable state statutes did include provisions for indigency and the challenges came from nonindigent litigants. In essence, the decisions determined there was no due process violation as applied to the challengers.

15

In contrast, the Kansas scheme makes no provision for indigency and a court has no discretion to waive the fee or to provide for a delayed payment in order for a licensee to exercise his or her right to procedural due process. On its face, the statute constructs a barrier to due process that is potentially insurmountable. "Where an act of the legislature or a portion thereof is clearly unconstitutional, it is the duty of the courts to so declare and to hold the unconstitutional provision or provisions null and void. *State v. Barrett,* 27 Kan. 213, Syl. ¶ 2 (1882)." *State v. Cody*, 272 Kan. 564, 566, 35 P.3d 800 (2001).

A person does not have a fundamental right to possess a driver's license. But once a person does possess a driver's license, that person has an interest in the license which the State cannot take away without providing procedural due process. Such due process rights should not depend upon the depth of the licensee's pockets. We therefore hold that the $50 fee under K.S.A. 2014 Supp. 8-1020(d)(2) is unconstitutional on its face, and, consequently, that provision is null and void.

Nevertheless, the facial unconstitutionality of one provision in a statute does not necessarily make the entire statute null and void. Cf. *State v. Gould*, 271 Kan. 394, Syl. ¶ 3, 23 P.3d 801 (2001) (facial unconstitutionality of scheme for imposing upward departure sentences in K.S.A. 2000 Supp. 21-4716 did not affect downward departure provisions in the same statute). Consequently, Creecy's remedy in this case is not the restoration of his driving privileges, but rather the refund of the $50 fee.

CREECY RECEIVED PERSONAL SERVICE OF THE NOTICE OF SUSPENSION

Next, Creecy argues that he did not receive personal service of the DC-27 form, which is the officer's certification of a test refusal and notice of license suspension. Creecy argues that Officer Rollf shared the DC-27 with him, but took it back. As KDR argued, however, not only did Creecy retain possession of the DC-27 for a period of time

16

in the police station, the DC-27 was placed with Creecy's other belongings when Creecy was taken by ambulance to the hospital.

*Standard of Review*

Factual findings are reviewed for substantial competent evidence; questions of law are reviewed de novo. *Gannon,* 298 Kan. at 1175-76; *Fisher v. DeCarvalho*, 298 Kan. 482, 488, 314 P.3d 214 (2013) (whether statutory provisions regarding personal service were followed is reviewed de novo); *Gudenkauf v. Kansas Dept. of Revenue*, 35 Kan. App. 2d 682, 683, 133 P.3d 838 (2006).

*Analysis*

When a motorist refuses or fails to complete a breath test, K.S.A. 2014 Supp. 8-1002(c) spells out the procedure for an officer to carry out the administrative driver's licenses suspension:

> "When the officer directing administration of the testing determines that a person has refused a test and the criteria of subsection (a)(1) have been met . . . the officer shall serve upon the person notice of suspension of driving privileges pursuant to K.S.A. 8-1014, and amendments thereto. If the determination is made while the person is still in custody, service shall be made in person by the officer on behalf of the division of vehicles."

Personal service is defined in the Kansas Code of Civil Procedure as "delivering or offering to deliver a copy of the process and petition or other document to the person to be served." K.S.A. 2014 Supp. 60-303(d)(1)(A). The Code of Civil Procedure applies because under K.S.A. 2014 Supp. 8-1020(p), review of driver's license suspension proceedings is controlled by the KJRA unless otherwise specifically stated, and under

17

K.S.A. 77-623 decisions on petitions for review under KJRA are reviewable by appellate courts as in other civil cases.

Creecy argues that substantial compliance is the incorrect standard for evaluating whether personal service occurred and that strict compliance is required per *Anderson v. Kansas Dept. of Revenue*, 18 Kan. App. 2d 347, 853 P.2d 69 (1993). In *Anderson*, the officer could not remember personally serving the motorist with the DC-27, and the motorist testified that he did not personally receive the DC-27. The DC-27 was evidently placed in the motorist's belongings, which he received upon being released from custody. The panel held that this was not sufficient personal service under the statute in effect at the time and that "in Kansas . . . a 'bright line' rule requires strict adherence to the legislative mandate of personal service." 18 Kan. App. 2d at 355.

A later panel looked at subsequent legislative amendments to the implied consent statutory scheme, particularly K.S.A. 2007 Supp. 8-1001(v), which directed that "'[t]his act is remedial law and shall be liberally construed to promote public health, safety and welfare'" and held that the strict compliance standard of *Anderson* had been superseded by legislative mandate and that therefore substantial compliance with the service requirements of K.S.A. 2007 Supp. 8-1002(c) was sufficient. *Byrd v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 145, 150, 154, 221 P.3d 1168 (2010).

Upon reviewing *Byrd*, this court did not answer the question of whether strict or substantial compliance governs personal service of a DC-27 form, because the uncontroverted evidence established that the DC-27 notice was mailed to the motorist in accordance with the terms of the statute regardless of whether a strict or substantial compliance standard was used. *Byrd v. Kansas Dept. of Revenue*, 295 Kan. 900, 907, 287 P.3d 232 (2012). In *Byrd*, the facts showed that the DC-27 was mailed to the motorist, not by the certifying officer, but by an administrative assistant who was given the DC-27 by

18

the officer after he completed it. There was no dispute that the form was mailed to the motorist, nor any dispute that the motorist received the form.

As in *Byrd*, we need not decide whether strict or substantial compliance applies, because Creecy was personally served with the DC-27 notice. Officer Rollf handed the form directly to Creecy, who possessed and perused the document. Only later was it placed with his other belongings. Moreover, Creecy used the form to timely request a hearing. Creecy's complaint about the service of the DC-27 is simply unavailing.

CREECY'S FAILURE TO COMPLETE A BREATH TEST WAS A TEST REFUSAL

Creecy argues that his failure to provide a sufficient breath sample was due to a medical condition which does not qualify as a test refusal as defined by K.S.A. 2014 Supp. 8-1013(i). The district court found that Creecy did not meet his burden to show that his failure to successfully complete a breath test was due to medical reasons, and the Court of Appeals agreed.

*Standard of Review*

A district court's factual findings in a license suspension matter are reviewed for substantial competent evidence. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012); *Call v. Kansas Dept. of Revenue*, 17 Kan. App. 2d 79, 82, 831 P.2d 970 (1992) (district court's findings regarding test refusal reviewed for substantial competent evidence). Creecy does not dispute the Court of Appeals' summary of the facts. See *State v. Brown*, 272 Kan. 843, 845, 35 P.3d 910 (2001) (substantial competent evidence standard used in cases with stipulated facts when the record includes conflicting testimony).

19

Substantial competent evidence is "'evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved.'" *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015). In reviewing a court's findings, an appellate court will not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *Mitchell v. Kansas Dept. of Revenue*, 32 Kan. App. 2d 298, 301, 81 P.3d 1258 (2004) (citing *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 387, 22 P.3d 124 [2001]).

*Analysis*

A test refusal is defined as "a person's failure to submit to or complete any test of the person's blood, breath, urine or other bodily substance, other than a preliminary screening test, in accordance with this act, and includes refusal of any such test on a military reservation." K.S.A. 2014 Supp. 8-1013(i). Creecy bore the burden of showing the district court that his failure to complete the breath test was due to a medical condition. See K.S.A. 2014 Supp. 8-1001(q) ("Failure of a person to provide an adequate breath sample or samples as directed shall constitute a refusal unless *the person shows* that the failure was due to physical inability caused by a medical condition unrelated to any ingested alcohol or drugs." [Emphasis added.]). See *Call*, 17 Kan. App. 2d at 84.

There is no dispute that Creecy experienced an episode at the police station that required medical attention. KDR does not allege that Creecy was malingering. In addition to testimony, video from the police station shows both incidents from that evening. No one disputes that Creecy was taken from the police station to the hospital.

But there was no medical evidence submitted to the district court as to the nature of these incidents. Officer Rollf offered his opinion that the episode was in the nature of a panic attack, but Officer Rollf was not testifying as a medical expert. Creecy, testifying

20

on his own behalf, offered that he was a lifelong sufferer of asthma, and he provided a certified letter from a physician regarding his asthma diagnosis. But the district court found no evidence that the particular episode at the police station was an asthma attack or that Creecy was medically incapable of providing a sufficient breath sample. Cf. *Call*, 17 Kan. App. 2d at 83-84 (motorist's stipulation that she blew as hard as she could insufficient to establish failure was due to physical inability caused by a medical condition unrelated to any ingested alcohol or drugs).

It was Creecy's burden to show the causal connection between his prior asthma diagnosis and his inability to successfully complete the breath tests that Officer Rollf administered. He failed to carry that burden and the district court did not err in finding a test refusal.

THE IMPLIED CONSENT ADVISORIES COMPLIED WITH STATUTORY REQUIREMENTS

Creecy argues that the written and oral implied consent advisories in this case did not comply with the applicable statutes, to-wit: K.S.A. 2014 Supp. 8-1001(k)(4)(A) and K.S.A. 2014 Supp. 8-1013(i).

K.S.A. 2014 Supp. 8-1001(k)(4)(A) provides:

> "(k) Before a test or tests are administered under this section, the person shall be given oral and written notice that:
>
> . . . .
>
> (4) if the person refuses to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, the person may be charged with a separate crime of refusing to submit to a test to determine the presence of alcohol or

21

drugs, which carries criminal penalties that are greater than or equal to the criminal penalties for the crime of driving under the influence, if such person has:

(A) Any prior test refusal as defined in K.S.A. 8-1013, and amendments thereto, which occurred: (i) On or after July 1, 2001; and (ii) when such person was 18 years of age or older."

"Test refusal" is defined in K.S.A. 2014 Supp. 8-1013(i) as "a person's failure to submit to or complete any test of the person's blood, breath, urine or other bodily substances, other than a *preliminary screening test . . . .*" (Emphasis added.)

The DC-70 used in this case has a revision date of July 2013. The relevant language on the form states:

"4. If you refuse to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, you may be charged with a separate crime of refusing to submit to a test to determine the presence of alcohol or drugs, which carries criminal penalties that are greater than or equal to the criminal penalties for the crime of driving under the influence **if** you have a prior refusal for an evidentiary test for alcohol or drugs or a prior conviction or diversion for DUI or driving a commercial motor vehicle with an alcohol content of .04 or more, **and** such prior refusal or conviction occurred on or after July 1, 2001, and when you were 18 years of age or older."

Creecy argues that the DC-70 did not define a prior test refusal to exclude the PBT from the definition of prior tests, giving the impression that even a prior refusal of a PBT would make him subject to a criminal sanction.

22

*Standard of Review*

Whether an implied consent advisory complies with statutory requirements and provides sufficient notice is a question of statutory interpretation, which is a question law subject to unlimited review. *Shrader v. Kansas Dept. of Revenue*, 296 Kan. 3, 6, 290 P.3d 549 (2012); *State v. Dale*, 293 Kan. 660, 662, 267 P.3d 743 (2011).

*Analysis*

An implied consent advisory need not mirror the statutory language; substantial compliance with the statute is usually sufficient. *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213, 755 P.2d 1337 (1988). Substantial compliance is construed to mean that the notice given must be sufficient to advise the party of the essentials of the statute. 243 Kan. at 213; see *Fisher*, 298 Kan. at 490.

In *Barnhart*, the implied consent notice at issue said that a person who submits to testing "'may have additional testing done as soon as possible and as available.'" 243 Kan. at 211. The motorist argued that this did not comply with the statutory language in effect at the time, which stated that a person *should* have additional testing done as soon as possible. 243 Kan. at 211. This court held that, although it would have been preferable if the implied consent advisory forms mirrored the statutory language, in that case the advisory substantially complied with the statute. 243 Kan. at 213-14. Moreover, this court noted that the motorist's refusal in that particular case had nothing to do with the prospect of additional testing; the motorist refused because he was under stress and thought his constitutional rights were being violated. 243 Kan. at 213.

Creecy draws support from *State v. Gross*, No. 112,229, 2015 WL 1000175, at *3-4 (Kan. App. 2015) (unpublished opinion), and *Meigs v. Kansas Dept. of Revenue*, 251

23

Kan. 677, 681-82, 840 P.2d 448 (1992), which both found that the implied consent advisories used did not sufficiently advise the person of his or her rights. *Gross* in particular found that the DC-70 form in question failed to draw a distinction between a prior refusal to consent to a PBT and a refusal of an evidentiary test. 2015 WL 1000175, at *4.

Both *Gross* and *Meigs* dealt with different versions of the DC-70. Here, the DC-70 form with the July 2013 revision is nearly identical to the wording of K.S.A. 2014 Supp. 8-1001(k)(4)(A), but it also incorporates the definition of "test refusal" in K.S.A. 2014 Supp. 8-1013(i) by specifically referring to an *evidentiary* test. The panel in this case relied on an earlier unpublished Court of Appeals opinion, *Chalfant v. Kansas Dept. of Revenue*, No. 112,863, 2015 WL 6620554, at *2 (Kan. App. 2015) (unpublished opinion), that held that the reference to an "evidentiary test" was sufficient to let the motorist know that PBTs were not part of the calculus. The panel recognized that Creecy's argument is not so much a substantial compliance argument as it is a statutory vagueness argument. The language of the DC-70 used in this case nearly mirrors the statutory language; Creecy's argument really concerns whether the statute itself is clear. The panel found:

> "Even if the term were otherwise less than crystal clear, the DC-70 still substantially conformed to the law. The form's language isn't so much incorrect as it tends toward the obscure. . . . If he were complaining that the language can't be characterized as plain English, he would have a valid point, although not necessarily one with any legal significance in this case." *Creecy*, 2017 WL 6397038, at *4.

We also note the under Creecy's argument, the overbroad language would induce more drivers, not less, to submit to testing, and in Creecy's case he refused testing despite the purportedly overbroad language. At any rate, we agree with the *Chalfant* panel that the term "evidentiary test" is sufficient to differentiate that type of test from a PBT,

making the DC-70 advisories substantially compliant with the statutory language. Under *Barnhart* and *Fisher*, substantial compliance is what is required, and the language used here meets that test.

We reverse the Court of Appeals and district court on the constitutionality of K.S.A. 2014 Supp. 8-1020(d)(2) and remand with directions to refund the $50 fee. We affirm on the remaining issues.

STEGALL, J., concurs in the result.