NOT DESIGNATED FOR PUBLICATION

No. 124,409

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEPHAN MICHAEL SWEENEY,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Saline District Court; JEROME P. HELLMER, judge. Opinion filed December 30, 2022. Affirmed.

*Roger D. Struble*, of Blackwell & Struble, LLC, of Salina, for appellant.

*Donald J. Cooper*, of Kansas Department of Revenue, for appellee.

Before GARDNER, P.J., WARNER and COBLE, JJ.

PER CURIAM: Stephan Michael Sweeney appeals the district court's decision affirming the Kansas Department of Revenue's (KDOR) suspension of his driver's license, arguing the suspension arose from an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution. On appeal, we find that the minimally prolonged traffic stop precipitating the suspension of Sweeney's driver's license was constitutional and, therefore, affirm the district court's decision upholding the suspension order.

1

On August 23, 2019, after 11 p.m., Sweeney left the Paramount Bar after consuming at least a couple of alcoholic drinks and began driving. At that time, Saline County Sheriff's Deputy Jay Rector and a reserve deputy were on patrol in Saline County when Deputy Rector observed Sweeney commit two traffic violations: rolling through a stop sign and making an unlawfully wide turn. Deputy Rector then activated his lights, and Sweeney properly pulled over.

As Deputy Rector approached Sweeney's vehicle, he noticed that all the windows were rolled down. When the deputy reached Sweeney's driver-side window, Sweeney already had his driver's license ready without the deputy requesting it. When Deputy Rector informed Sweeney that he was being stopped for the unlawful stop and turn, Sweeney responded, "'I'm sorry.'" During this initial encounter, Deputy Rector did not observe any alcoholic beverages in Sweeney's vehicle, any odor of alcohol coming from Sweeney, anything unusual about Sweeney's vehicle coming to a stop while being pulled over, or any problems with Sweeney's finger dexterity. Nor did Deputy Rector observe— at this point in the stop—that Sweeney had watery, bloodshot eyes, or slurred speech. Deputy Rector then returned to his patrol car to verify Sweeney's identity and the validity of his license.

Upon returning to his patrol car, Deputy Rector commented to the other deputy that all of Sweeney's windows were rolled down and that he wanted to "find out what [Sweeney is] doing." After confirming that Sweeney's license was valid, Deputy Rector did not prepare a citation for the unlawful turn or stop. Rather, he returned to Sweeney's driver-side window and, without returning the driver's license, began to question him. Upon arriving at Sweeney's vehicle for this second encounter and initiating conversation, Deputy Rector observed that Sweeney had watery, bloodshot eyes and slurred speech. The deputy also smelled the odor of alcohol coming from Sweeney's breath. Deputy

Rector asked Sweeney multiple times if he had been consuming alcohol and Sweeney repeatedly denied having done so.

Deputy Rector then asked Sweeney to perform several field sobriety tests—an alphabet test, a counting test, and a finger-dexterity test—and Sweeney performed poorly on all of them. The deputy then administered a preliminary breath test which indicated that Sweeney had a blood alcohol content of 0.122, which exceeds the legal limit in Kansas. Deputy Rector then arrested Sweeney for driving under the influence (DUI).

Sweeney was personally served with the "Officer's Certification and Notice of [Driver's License] Suspension." Sweeney requested an administrative hearing with the KDOR, and the administrative hearing officer affirmed the suspension of Sweeney's driver's license. Sweeney filed a petition for review of the KDOR's administrative suspension order in the Saline County District Court pursuant to K.S.A. 8-259(a). The district court held a de novo bench trial for the case, at which both Sweeney and Deputy Rector testified.

At trial, Sweeney disputed that he had made an improper stop, but he did not deny that he had made an unlawfully wide turn. Sweeney's attorney conceded at trial that Sweeney did not challenge either alleged traffic violation during the stop.

Deputy Rector testified that, at the time of the traffic stop, he had approximately nine years of law enforcement experience with various police departments in Kansas, which included being trained in DUI stops and investigations. The deputy further testified that over the course of his career, he had conducted over 100 DUI investigations.

Regarding all of Sweeney's windows being rolled down, Deputy Rector testified that, in his experience and training, "people who have been consuming alcoholic beverages will generally roll windows down to try to air that vehicle out pretty rapidly."

3

Sweeney testified that he had rolled all the windows down to air out the smell of a bag of hamburgers from a notoriously odorous restaurant, but Deputy Rector testified he did not recall smelling any such odor emanating from Sweeney's vehicle despite his familiarity with the notorious odor.

Sweeney testified that he was not slurring his speech during the traffic stop and that he just has naturally slow speech and was speaking as he normally does. However, Sweeney admitted that he had indeed been drinking alcohol that evening and that he lied to Deputy Rector when asked if he had consumed alcohol.

In his testimony, Deputy Rector explained that he decided to start a DUI investigation based upon the odor of alcohol, the obvious signs of impairment that he had been trained to identify, and his observation of Sweeney's driving. Deputy Rector further testified that his belief that Sweeney might be driving under the influence was based upon: (1) Sweeney's watery, bloodshot eyes; (2) Sweeney's slurred speech; (3) the unlawful stop and turn; (4) all the windows being rolled down; and (5) Sweeney's response of "'I'm sorry'" rather than an immediate denial of the alleged traffic infractions.

After the trial, both parties filed posttrial briefs addressing the issue of whether the traffic stop as prolonged by the deputy was constitutional. Sweeney's position was that, although the initial traffic stop was uncontested, at the point in time where the deputy reapproached the vehicle after checking Sweeney's identity, he should have been given either a ticket or warning, given his license back, and released rather than the stop being prolonged for the DUI investigation. The KDOR's position was that, during the traffic stop, the deputy gained a reasonable suspicion that Sweeney was engaged in illegal activity.

In a hearing on August 24, 2021, the district court announced its judgment from the bench. The district court upheld the KDOR's administrative suspension order, stating:

4

"A review of the record and the briefs that have been filed by the respondent parties, Petitioner and Respondent in this matter though, give the Court the following findings of fact which has been articulated in the Post Trial Brief of the Respondent in this matter.

"The traffic stop no one at this point in time seriously contends was not valid.

"It's simply the point in which time Deputy Rector received the driver's license, the proof of insurance, went back to this patrol car and had further comment with the reserve deputy.

"It was upon his return to the vehicle that has now been clarified in fact he did not return the driver's license to Mr. Sweeney, and he continued at that point in time with the investigation based upon slurred speech, bloodshot and watery eyes, odor of alcohol that seemed to continue to increase in spite of all four windows being rolled down.

"Further inquiry of Mr. Sweeney relative to his alcohol consumption which he denied. Later determined that at trial that in fact he had consumed alcohol at the Paramount Bar. Under the totality of the circumstances, the Court finds that the determination of the hearing examiner relative to the reasonable basis for the stop and the reasonable suspicion continued. The DUI investigation would be affirmed . . . ."

On September 14, 2021, the district court filed the journal entry of judgment, stating:

"After reviewing the file, the testimony presented, the arguments of counsel, post-trial briefs and authorities submitted, the Court finds the officer lawfully stopped Petitioner for a traffic violation, and the officer did have probable cause or reasonable grounds to believe the Petitioner was operating a motor vehicle under the influence of alcohol. The Court finds for the Respondent on this petition."

Sweeney filed a timely notice of appeal.

DISCUSSION

*Preservation*

As a threshold issue, we address whether Sweeney's claim that his encounter with Deputy Rector violated the Fourth Amendment to the United States Constitution is properly preserved for appeal. Sweeney preserved the issue for appeal to the district court following the adverse ruling in the administrative hearing. Sweeney then asserted this claim in the district court and the district court directly ruled on the claim. Accordingly, Sweeney's constitutional claim is properly preserved for review by this court.

*Standard of review*

Appeals from the administrative suspension of driver's licenses are subject to review under the Kansas Judicial Review Act. *Rosendahl v. Kansas Dept. of Revenue*, 310 Kan. 474, 480, 447 P.3d 347 (2019); see K.S.A. 2021 Supp. 8-259(a); K.S.A. 77-601 et seq. On appeal, the burden of proving the invalidity of the agency action rests on Sweeney as the party asserting the invalidity. See K.S.A. 77-621(a)(1). K.S.A. 2021 Supp. 8-1020(q) further provides that "[u]pon review, the licensee shall have the burden to show that the decision of the agency should be set aside."

"A district court's factual findings in a license suspension matter are reviewed for substantial competent evidence," while the district court's legal conclusions derived from those factual findings are reviewed de novo. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 469, 447 P.3d 959 (2019); *Johnson v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 431, 436, 472 P.3d 92 (2020) ("When reviewing a district court's decision in a driver's license suspension case, appellate courts generally will determine whether substantial competent evidence in the record supported the district court's factual findings and whether the conclusion derived from those findings is legally correct."), *rev. denied* 313 Kan. 1041 (2021).

"The determination of whether an officer has reasonable grounds for a particular action involves a mixed question of law and fact, and appellate courts review the ultimate legal conclusion—whether reasonable grounds existed—independently, while deferring to the district court's factual findings." *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1213, 442 P.3d 1038 (2019). Substantial competent evidence for such factual findings is evidence that possesses both relevance and substance and furnishes a substantial basis of fact from which the issues can reasonably be resolved. *Creecy*, 310 Kan. at 469. In reviewing the district court's factual findings, this court "will not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." 310 Kan. at 469.

*Sweeney may challenge the administrative suspension of his driver's license on constitutional grounds.*

The Fourth Amendment to the United States Constitution provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. The Kansas Constitution Bill of Rights likewise prohibits unreasonable searches and seizures. Kan. Const. Bill of Rights, § 15. Moreover, "the Fourth Amendment applies to all governmental action, not just actions in criminal investigation; and its protections apply to all people, not just criminal defendants." *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 635, 179 P.3d 938 (2008). "[A] traffic stop, even one leading to administrative rather than criminal proceedings, is a seizure" under the Fourth Amendment and section 15. *Jarvis v. Kansas Dept. of Revenue*, 312 Kan. 156, 171, 473 P.3d 869 (2020); see *State v. Jimenez*, 308 Kan. 315, 322, 420 P.3d 464 (2018) ("A routine traffic stop is a seizure under the Fourth Amendment."); *Martin*, 285 Kan. at 636 ("A traffic stop is not magically converted to a 'nonseizure' when it leads to a civil or administrative rather than a criminal proceeding.").

Pursuant to K.S.A. 2021 Supp. 8-1020, the unconstitutionality of a law enforcement encounter is now an appropriate basis for setting aside the administrative suspension of a driver's license. See *Jarvis*, 312 Kan. at 167-69. The law governing this issue has a complicated history, and it was not always true that constitutionality alone could provide an independent reason to set aside a driver's license suspension order. Compare *Jarvis*, 312 Kan. at 167-69 (holding that the amended language found in K.S.A. 2016 Supp. 8-1020 conferred upon courts the authority to set aside a driver's license suspension order if it arose from an unlawful stop) with *Martin*, 285 Kan. at 646 (finding that the exclusionary rule does not apply to driver's license suspension proceedings and a prior version of the statute, K.S.A. 2007 Supp. 8-1020, did not permit an administrative agency to decide whether the stop was constitutional). Here, though, a recitation of that history is unnecessary, because the parties do not dispute the current statutory authority for considering the constitutionality of the prolonged stop.

If Sweeney can establish that his encounter with Deputy Rector violated the Constitution, then K.S.A. 2021 Supp. 8-1020 provides a statutory basis upon which his driver's license suspension may be held invalid and set aside. See *Jarvis*, 312 Kan. at 167 ("An unlawful stop is a basis for setting aside a suspension order.").

*Governing Fourth Amendment analysis*

At the outset, the parties agree the initial traffic stop was valid. "A traffic violation provides an objectively valid reason to effect a traffic stop, even if the stop is pretextual." *Martin*, 285 Kan. at 636; see *Rodriguez v. United States*, 575 U.S. 348, 354, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015) ("A seizure for a traffic violation justifies a police investigation of that violation."); *Jarvis*, 312 Kan. at 171.

Sweeney does not dispute that he made an unlawfully wide turn and, therefore, does not dispute that the initial seizure was lawful. Nor does Sweeney question that

8

Deputy Rector eventually accrued the requisite reasonable suspicion during the traffic stop to support a DUI investigation. Rather, Sweeney argues that Deputy Rector unconstitutionally prolonged the detention before he attained the requisite reasonable suspicion to do so, which invalidates the DUI investigation.

The United States Supreme Court has held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez*, 575 U.S. at 350. "A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." 575 U.S. at 350-51 (quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 160 L. Ed. 2d 842 [2005]). Accordingly, "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez*, 575 U.S. at 354; see *Caballes*, 543 U.S. at 407 ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.").

That does not mean, however, that officers are categorically prohibited from pursuing investigations unrelated to the initial reason for the stop. See *Rodriguez*, 575 U.S. at 354 ("[T]he Fourth Amendment tolerate[s] certain unrelated investigations that d[o] not lengthen the roadside detention."). Rather, "[a]n officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop," but "he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez*, 575 U.S. at 355. "An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009).

The Kansas Supreme Court has likewise held: "While a driver is being detained for a routine traffic stop, a law enforcement officer may not conduct questioning unrelated to the officer's mission if it *measurably extends* the stop—absent probable cause or the reasonable suspicion ordinarily demanded to justify detaining an individual." (Emphasis added.) *Jimenez*, 308 Kan. 315, Syl. ¶ 4; see also *State v. Coleman*, 292 Kan. 813, 816, 257 P.3d 320 (2011) ("An officer's inquiries or actions unrelated to the justification for an initial traffic stop do not convert the stop into an unlawful seizure so long as they do not measurably extend or prolong the stop."). In *Jimenez*, the court warned:

> "[O]fficers engaging in traffic stops in *Rodriguez*' wake must be attentive to how and when they conduct what may be viewed as unrelated inquiries. They must be especially careful to ensure nonconsensual inquiries occur concurrently with the tasks permitted for such stops so they will not measurably extend the time it would otherwise take. We would more simply describe this today as multitasking. If not, the unrelated inquiries must be supported by reasonable suspicion, probable cause, or consent. Without this, the detention becomes unconstitutional." 308 Kan. at 325-26.

Sweeney maintains it is the duty of this court to determine "whether the evidence and inferences support the finding of the district court judge that there was a valid reason to continue [his] detention . . . and that the deputy was justified in abandoning the purpose of the stop and commencing a criminal investigation." Sweeney further argues that Deputy Rector failed to "properly pursue the traffic infraction" and that he "did not have any indicators of impairment *until the traffic stop was extended*." (Emphasis added.)

The KDOR enumerates six factors upon which Deputy Rector relied in forming the reasonable suspicion necessary to warrant further detention for a DUI investigation: (1) the traffic violations; (2) the time at which the stop occurred; (3) all of Sweeney's car windows being rolled down; (4) the odor of alcohol emanating from Sweeney's breath; (5) Sweeney's bloodshot, watery eyes; and (6) Sweeney lying about whether he had

10

consumed alcohol. And Sweeney does not argue that those six factors were insufficient to establish the requisite reasonable suspicion. Rather, Sweeney's argument is that Deputy Rector had to unconstitutionally prolong the traffic stop in order to acquire factors four, five, and six. Both parties devote the bulk of their briefing to the question of whether Deputy Rector had the requisite reasonable suspicion that Sweeney was driving under the influence. Ultimately, however, this court does not need to reach that question.

As the caselaw makes clear, the question of whether Deputy Rector possessed the requisite reasonable suspicion that Sweeney was driving under the influence only must be reached if this court finds that the deputy actually *did* measurably prolong the duration of the traffic stop. If Deputy Rector did not measurably prolong the duration of the traffic stop, then he was not required at that time to possess a reasonable suspicion that Sweeney was driving under the influence. See *Rodriguez*, 575 U.S. at 357 (explaining that the "critical question" is whether the investigation unrelated to the initial reason for the stop "'prolongs'—*i.e.*, adds time to—'the stop'"). So, only if we find that Deputy Rector measurably prolonged the traffic stop must we then determine whether that extension was supported by reasonable suspicion.

The parties do not dispute the duration or timeline of the traffic stop, which was recorded in Deputy Rector's bodycam footage and presented as part of the record on appeal. Because the duration and timeline of the stop are undisputed, this court exercises de novo review of whether Deputy Rector unconstitutionally prolonged the traffic stop. See *Rosendahl*, 310 Kan. at 479. Moreover, the district court did not specifically resolve the issue of whether Deputy Rector prolonged the traffic stop; it simply determined that Deputy Rector possessed the reasonable suspicion necessary to justify the stop under the Fourth Amendment. However, "[i]f a trial court reaches the right result, its decision will be upheld even though the trial court relied upon the wrong ground or assigned erroneous reasons for its decision." *Montoy v. State*, 278 Kan. 765, 768, 102 P.3d 1158 (2005); see *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015).

11

The critical moment here is when Deputy Rector, after confirming the validity of Sweeney's driver's license, decided not to prepare a traffic citation and, instead, returned to Sweeney's vehicle to question him. Everything before that moment was supported by the reasonable suspicion arising from Deputy Rector's personal observation of the traffic infractions, one of which Sweeney concedes he committed. See *Martin*, 285 Kan. at 636 ("A traffic violation provides an objectively valid reason to effect a traffic stop, even if the stop is pretextual."); see also *Rodriguez*, 575 U.S. at 354 ("A seizure for a traffic violation justifies a police investigation of that violation."); *Jarvis*, 312 Kan. at 171.

Upon returning to Sweeney's vehicle and speaking with him, Deputy Rector immediately observed the indications of impairment—slurred speech, odor of alcohol, and bloodshot, watery eyes—which Sweeney does not deny established reasonable suspicion that he was driving under the influence (and thereby made lawful the further detention necessary to investigate that crime). See *Jimenez*, 308 Kan. 315, Syl. ¶ 5 ("A law enforcement officer need not disregard information that may lead the officer to suspect other criminal activity during a traffic stop. When the detainee's responses and circumstances lead to suspicions unrelated to the traffic offense, an officer may broaden the inquiry and satisfy those suspicions."); *Coleman*, 292 Kan. at 816-17 (explaining that "an officer may expand the investigative detention beyond the purpose of the initial stop only if there is an objectively reasonable and articulable suspicion that criminal activity was or is taking place"). Accordingly, the only time during the traffic stop relevant to our Fourth Amendment analysis here is the time it took for Deputy Rector to walk from his patrol car back to Sweeney's car for their second encounter.

It is at this point that Sweeney argues that "Deputy Rector continued the detention for additional questioning, failing to properly pursue the traffic infraction." Sweeney argues that he "did not have any indicators of impairment until the traffic stop was extended."

12

Fatal to Sweeney's argument is that Deputy Rector's decision to return to Sweeney's vehicle to question him instead of preparing a traffic citation did not measurably prolong the duration of the traffic stop; in fact, it did not prolong the duration of the stop at all. Regardless of whether Deputy Rector was going to give Sweeney a verbal warning and send him on his way or question him about his alcohol consumption, Deputy Rector was going to have to return to Sweeney's vehicle and exchange words with him. The fact that Deputy Rector chose to do so for the latter reason instead of the former reason is irrelevant to the question of whether his conduct prolonged the duration of the traffic stop beyond that reasonably necessary to issue a citation or warning for the traffic infractions—it did not. Deputy Rector was going to return to Sweeney's vehicle and speak with him *either way*. And, presumably, Deputy Rector would have observed the same indications of impairment either way, thereby establishing an independent source of reasonable suspicion sufficient to support further detention for a DUI investigation.

Even if this court were to assume for the sake of Sweeney's argument that every second that transpired between when Deputy Rector decided to walk back to Sweeney's vehicle instead of preparing a citation and when the deputy reached Sweeney's vehicle for their second encounter constituted a prolongation of the traffic stop, that only amounted to approximately 17 seconds according to Deputy Rector's bodycam footage. Even a more generous characterization of the elapsed time—measured from the moment Deputy Rector remarks in his patrol car that he wants to "find out what [Sweeney is] doing" to the moment he returns to Sweeney's vehicle and begins speaking with him—is only 1 minute and 18 seconds, during which Deputy Rector is properly processing Sweeney's information and pursuing the purpose of the traffic stop. Such a small amount of time— during which Deputy Rector was still appropriately processing the traffic violations— cannot reasonably be characterized as *measurably* extending the duration of the traffic stop.

13

In sum, Deputy Rector's initial investigation into whether Sweeney was driving under the influence was performed within "'the time reasonably required to complete th[e] mission' of issuing a ticket for" Sweeney's traffic violations. See *Rodriguez*, 575 U.S. at 350-51 (quoting *Caballes*, 543 U.S. at 407). Accordingly, it did not extend the duration of the traffic stop beyond that permitted by the Fourth Amendment, so it is unnecessary to demonstrate that Deputy Rector possessed the independent reasonable suspicion necessary to justify his decision to return to Sweeney's vehicle for their second encounter.

As an illustration, we compare the timeline of the stop here to the timeline of the stop disapproved by the United States Supreme Court in *Rodriguez*. In *Rodriguez*, the officer had already issued a written warning and fully completed the traffic stop when he required the detained vehicle to remain in place and wait for a second officer to arrive before conducting a dog sniff. But here, Deputy Rector had not yet completed the initial reason for the traffic stop when he returned to Sweeney's vehicle for their second encounter; he was, in the words of the Kansas Supreme Court, "concurrently" inquiring into both the traffic violations and whether Sweeney was driving under the influence. See *Jimenez*, 308 Kan. at 325-26.

Further compare the timeline of the traffic stop here to the timeline of the traffic stop disapproved by our state Supreme Court in *Jimenez*. In *Jimenez*, the officer immediately abandoned the initial reason for the traffic stop and, instead, brought the driver back to his patrol car for questioning unrelated to the observed traffic infraction. It was not until 5 minutes and 34 seconds after the traffic stop began that the officer even called in the driver's license information to his dispatch. The Kansas Supreme Court held that this conduct "prolonged the stop because [the officer] was doing nothing in the interim to process the traffic violation." 308 Kan. at 331. But unlike the officer in *Jimenez* who immediately abandoned the initial reason for the traffic stop for a significant period of time to subject the driver to unrelated questioning, Deputy Rector

was promptly processing the traffic violations when he returned to Sweeney's vehicle for their second encounter. In sum, unlike the officers in *Rodriguez* and *Jimenez*, Deputy Rector never measurably suspended or paused the traffic stop in order to devote that significant amount of time to an unrelated investigation.

Because Deputy Rector's decision to return to Sweeney's vehicle to question him instead of preparing a traffic citation did not measurably prolong the duration of the traffic stop, the deputy was not required to possess the independent reasonable suspicion necessary to justify that decision. And while the district court did not specifically address this issue, it nevertheless reached the correct result. The traffic stop was performed consistent with the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights and, therefore, it does not constitute an appropriate basis under K.S.A. 2021 Supp. 8-1020 to set aside the administrative suspension order. Accordingly, we affirm the district court's decision upholding the administrative suspension of Sweeney's driver's license.

Affirmed.